NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

LYNANDRA W., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, D.P., G.P., *Appellees.*

No. 1 CA-JV 15-0100
FILED 10-29-2015

Appeal from the Superior Court in Maricopa County
No. JD17731
The Honorable Bradley H. Astrowsky, Judge

**AFFIRMED**

COUNSEL

Denise L. Carroll, Esq., Scottsdale
By Denise L. Carroll
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellees*

---

**MEMORANDUM DECISION**

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Peter B. Swann joined.

---

**J O N E S**, Judge:

¶1        Lynandra W. (Mother) argues insufficient evidence supports the juvenile court's finding that D.P. and G.P. (collectively, the Children) were dependent as a result of Mother's substance abuse.  For the following reasons, we affirm.

### FACTS[1] AND PROCEDURAL HISTORY

¶2        In October 2014, the Department of Child Safety (DCS) received a report that Mother and G.P. both tested positive for opiates and marijuana at the hospital following G.P.'s birth.  Upon review of past reports of Mother and her other children[2] testing positive for opiates and cocaine at birth, DCS filed a dependency petition as to G.P. and Mother's then four-year-old son, D.P.  Mother agreed to an in-home dependency, with maternal grandmother to serve as safety monitor, and to participate in urinalysis and hair follicle drug screens, as well as substance abuse treatment.

¶3        Between October and December 2014, Mother presented for seven of twenty-one required urinalysis tests.  She tested positive for marijuana seven times, cocaine once, opiates once, provided an insufficient sample on one occasion, and missed thirty-one of fifty-three call-in days.  As a result, DCS took temporary custody of the Children in December 2014, placed them in a licensed foster home, sought and obtained an order changing physical custody, and proceeded with its petition alleging Mother

---

[1]        "On review of an adjudication of dependency, we view the evidence in the light most favorable to sustaining the juvenile court's findings." *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235, ¶ 21 (App. 2005).

[2]        The record reflects Mother and her newborn children tested positive for opiates and cocaine at their births in 2007 and 2009.  Mother's parental rights to those children were previously severed, and they are not parties to this appeal.

was unable or unwilling to parent the Children as a result of substance abuse. A subsequent hair follicle drug screen of maternal grandmother, the safety monitor, also tested positive for methadone.

¶4            Mother contested the dependency petition but agreed at a December 2014 mediation to participate in parent aide and case aide services, supervised visitation, a psychological evaluation, substance abuse testing, and substance abuse assessment and treatment. DCS agreed to provide transportation services. An adjudication hearing on the dependency petition was scheduled for March 5, 2015.

¶5            At the hearing, the DCS case manager expressed concerns regarding Mother's ability to care for the Children while under the influence of drugs. After the Children were removed from Mother's care, she presented for only two of seven required urinalysis tests in January 2015 and tested positive for marijuana both times. Additionally, she missed nine of twenty-three call-in days. Between February 1 and 20, 2015, Mother presented for two of three required urinalysis tests and failed to call in five times. She tested positive for marijuana on the first test, and the second was still in process at the time of the hearing. Mother also refused to provide a hair follicle sample on two occasions in February.

¶6            Mother testified she knew she was supposed to call into the drug testing agency every day but provided no explanation for her failure to do so. She estimated she had missed "maybe five" tests because she did not have transportation. DCS conceded it had not provided Mother with transportation services as agreed at the mediation.

¶7            Mother also testified she had a "prescription" for two of the three substances she tested positive for at G.P.'s birth — marijuana and opiates. However, she did not provide a copy of any prescriptions or her medical marijuana card to DCS or the juvenile court. In fact, Mother admitted her medical marijuana card expired in early October 2014, and she had been purchasing and using marijuana illegally for the five months immediately preceding the trial. And, the DCS case manager testified that holding a medical marijuana card does not necessarily negate concerns about possible abuse or use while supervising the Children.

¶8            Mother completed the intake process for substance abuse treatment in January 2015, through which she was assessed with an opioid dependence disorder. The counselor noted Mother may have other possible substance use disorders, but "her evasiveness impedes one to determine such criteria." Despite this assessment, Mother denied having

any substance abuse problem, reasoning, "I'm prescribed a medicine that causes you to be addicted to it. . . . I'm out there just looking for drugs, no." Mother denied any recent cocaine use and refused to participate in the recommended Intensive Outpatient Program, "display[ing] fury such that her body appeared shaking." Mother called the treatment provider a few days later indicating she would participate but did not follow-up. The service was closed on February 9, 2015.

¶9 Although the juvenile court acknowledged communication issues between DCS and Mother, it found "credible the testimony that she missed required tests, tested positive for marijuana, and did so without a valid prescription, and that from the testimony of [the DCS case manager and investigator] and the Court's own observations, her substance use and abuse impacts her ability to safely supervise the children." The court also found Mother negatively impacted her credibility by failing to disclose her safety monitor's methadone use, and Mother's demeanor and presentation indicated her chronic substance abuse was "depressing . . . her cognitive ability." The court further found DCS made reasonable, although ultimately unsuccessful, efforts to prevent an out-of-home placement by providing substance abuse assessment and treatment, drug testing, and implementation of a safety plan. *See* Ariz. Rev. Stat. (A.R.S.) § 8-844(B)[3] (directing the juvenile court to consider "the availability of reasonable services to the parent or guardian to prevent or eliminate the need for removal of the child"). Based upon these facts, the court concluded DCS had proven by a preponderance of the evidence that the Children were dependent as to Mother and adopted a primary case plan of family reunification, with a concurrent case plan of severance and adoption for G.P.[4]

¶10 Mother timely appealed. We have jurisdiction pursuant to A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A). *See Yavapai Cnty. Juv. Action No. J-8545*, 140 Ariz. 10, 14 (1984) (holding "orders declaring children dependent . . . are final orders subject to appeal by aggrieved parties").

---

[3] Absent material revisions from the relevant date, we cite a statute's current version.

[4] The trial court also found the Children dependent as to their father. However, he did not dispute the finding and is not a party to this appeal.

**DISCUSSION**

**¶11**      Mother argues DCS presented insufficient evidence to support an adjudication of dependency because: (1) DCS did not provide bus passes that Mother needed to complete services; and (2) DCS never requested a copy of Mother's prescriptions, which she contends would have negated any finding that she had a substance abuse problem.

**¶12**      A "dependent child" is "one who has no parent or guardian willing to exercise or capable of exercising [effective parental] care and control." A.R.S. § 8-201(14)(a)(i). A parent may be unable to discharge his parental responsibilities as a result of chronic abuse of dangerous drugs or controlled substances. *See* A.R.S. § 8-533(B)(3); *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 378, ¶ 23 (App. 2010) (affirming the juvenile court's conclusion that a parent was unable to discharge his parental responsibilities as a result of chronic drug and alcohol abuse).

**¶13**      A finding of dependency requires proof by a preponderance of the evidence. A.R.S. § 8-844(C)(1). We review an order adjudicating children dependent for an abuse of discretion, deferring to the juvenile court's ability to weigh and analyze the evidence. *Louis C. v. Dep't of Child Safety*, 237 Ariz. 484, 488, ¶ 12 (App. 2015). We will therefore only disturb a dependency adjudication if no reasonable evidence supports it. *Id.* (citing *Willie G.*, 211 Ariz. at 231, ¶ 21). Viewing the evidence in the light most favorable to upholding the juvenile court's ruling, we conclude sufficient evidence exists to support its finding of dependency.

**¶14**      First, Mother testified she missed "maybe five" tests for a lack of transportation. She did not, however, offer any explanation for fifteen other missed tests and the nearly fifty days she failed to call in to the testing center. The lack of bus passes, although unfortunate, was largely irrelevant to a determination of whether the Children are dependent.

**¶15**      Mother's second argument is equally unpersuasive. The record reflects DCS requested Mother's prescriptions[5] on at least two

---

[5]      Although this is the terminology used by Mother, we note that obtaining a valid medical marijuana card is not the same as possessing a prescription. *Compare* A.R.S. § 32-1901(77) (describing a "prescription order" as an order for drugs or devices issued from a licensed medical practitioner to a pharmacist), *with* A.R.S. § 36-2806.02 (permitting a dispensary to dispense marijuana to a "registered qualifying patient" under certain circumstances).

occasions. Moreover, nothing prevented Mother from producing any prescriptions she had, and these documents were clearly within her control. Further, Mother admitted to purchasing and using marijuana illegally for the five months immediately before the evidentiary hearing. Finally, the mere existence of a prescription does not, in itself, vitiate the claim that Mother suffers from substance abuse and is unable to parent as a result. This is particularly true where Mother tested positive for substances she admits she does not have a prescription for and where the concern expressed by DCS is the Children's safety, as well as whether Mother, even if using opiates and marijuana legally, "can be fully aware to provide for the [C]hildren emotionally and just be present with them." The juvenile court acknowledged as much when it concluded Mother's substance "use and abuse" affected her ability to parent.

**¶16** Substantial evidence exists to support a finding that Mother failed to acknowledge, let alone address, DCS's concerns with her drug use. Mother refused to participate in substance abuse treatment, content instead to simply deny having a substance abuse problem, deny using methadone or cocaine even though she tested positive for those substances, and deny that her actions had any negative affect on the Children even though the impact on her cognitive functioning was apparent to the juvenile court judge. The juvenile court specifically discredited Mother's testimony and accepted DCS's evidence that Mother suffered from a substance abuse problem that affected her ability to parent; we will not second-guess this assessment. *See Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234, ¶ 13 (App. 2011) ("The juvenile court is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings.") (citing *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002)). The court's findings, supported by the record and coupled with its observations of Mother's behavior and presentation, are sufficient to establish, by a preponderance of the evidence, that the Children are dependent.

**CONCLUSION**

¶17     The order of the juvenile court finding the Children dependent as to Mother is affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: ama