NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CARRAGANE C., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.C., *Appellees*.

No. 1 CA-JV 16-0281
FILED 2-7-2017

Appeal from the Superior Court in Maricopa County
No. JD31172
The Honorable Sally Schneider Duncan, Judge

**AFFIRMED**

COUNSEL

Czop Law Firm, PLLC, Higley
By Steven Czop
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By JoAnn Falgout
*Counsel for Appellees*

## MEMORANDUM DECISION

Presiding Judge Samuel A. Thumma delivered the decision of the Court, in which Chief Judge Michael J. Brown and Judge Patricia A. Orozco joined.[1]

**T H U M M A**, Judge:

**¶1**         Carragane C. (Mother) appeals from the superior court's order adjudicating her daughter A.C. dependent as to Mother. Because Mother has shown no reversible error, the order is affirmed.

### FACTS[2] AND PROCEDURAL HISTORY

**¶2**         Mother was born in 2000 and at all times relevant here has been a dependent child as to her mother and A.C.'s grandmother (Grandmother). In December 2014, when Mother was 14 years old and living in a group home, she gave birth to A.C. In August 2015, the Department of Child Safety (DCS) took A.C. into care and filed a dependency petition, claiming Mother neglected A.C. and had been physically aggressive toward another child. *See* Ariz. Rev. Stat. (A.R.S.) § 8-201(15) (2016).[3]

**¶3**         During the months that followed, a family reunification team was expedited, and for a time, A.C., Mother and Grandmother lived together. By May 2016, however, that placement disrupted, Mother moved out of Grandmother's home and Grandmother was A.C.'s placement.

**¶4**         At a mid-2016 contested dependency adjudication, after DCS rested, Mother elected to testify on her own behalf. When called by her

---

[1] The Honorable Patricia A. Orozco, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

[2] This court views the evidence in a light most favorable to sustaining the superior court's findings. *See Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, 207 ¶ 2 (App. 2008).

[3] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

attorney as a witness, Mother's guardian ad litem (GAL) "absolutely" agreed that it was in Mother's "best interests to not only have a trial but to testify." Mother then testified on direct examination, apparently with Grandmother in the courtroom, without incident for a time. After Mother's attorney and Mother's GAL then conferred, Mother's attorney stated "Judge, at this point in time I think it would be best to request that the rest of the hearing be closed . . . I do think that it's in the child's best interest in order for that to take place."

¶5        Although the transcript is somewhat unclear, DCS' attorney apparently responded that, to be proper, such a request needed to be more specific and supported "with something." The superior court stated a reluctance "to closing a courtroom unless I can make a legal good cause finding," adding that any "discussion that's going to be directed at [Grandmother] . . . is not really terribly relevant right now to the dependency issues." Mother's attorney responded that "I don't believe that my client is able to testify freely with persons in the courtroom. And I think that affects her ability to present her case." A.C.'s GAL stated that, as placement, Grandmother "has an absolute right to be in here," with the court then noting "she is placement. And I wouldn't be able to preclude her from being present anyway. So your request is noted for the record and overruled."

¶6        After Mother completed her direct examination, and DCS completed its cross-examination, Mother's GAL stated she was "going to join the request . . . that the proceedings be closed so that this child, who is 15 years old, can testify freely," noting that "the Court's already ruled." Mother's GAL stated "I don't think it's in her best interests to be in a position to testify when she's in a courtroom with" Grandmother, adding additional argument and concluding "[s]o that's my record." After addressing the issues raised by Mother's GAL, the superior court stated it was "mindful of the conflict that exists [between Mother and Grandmother], but the objection is noted for the record and overruled." Mother's GAL then cross-examined Mother without objection or apparent incident, Mother's attorney conducted redirect and the parties presented closing argument. Ruling from the bench, the court found DCS had met its evidentiary burden and found A.C. dependent as to Mother, adopted a family reunification case plan, addressed services and scheduled a report and review hearing.

¶7        This court has jurisdiction over Mother's timely appeal of the dependency finding pursuant to Article 6, Section 9, of the Arizona

Constitution and A.R.S. § 8-235(A), 12-2101(A) and 12-120.21(A) and Ariz. R.P. Juv. Ct. (Rule) 103-04.

## DISCUSSION

### I. The Superior Court Did Not Err In Denying The Requests To Close The Dependency Trial.

¶8 Mother argues the superior court erred in denying the requests, made by her attorney and GAL, to close the dependency trial. Mother concedes that this court reviews that decision for an abuse of discretion. *See Willie G. v. Ariz. Dep't. of Econ. Sec.*, 211 Ariz. 235, 238 ¶ 13 (App. 2005). Although Mother cites various legal authorities in pressing this argument on appeal, as discussed above, she failed to do so before the superior court. Accordingly, Mother may be deemed to have waived the issue by failing to timely cite to the superior court authority supporting the requests. *See Louis C. v. Dep't of Child Safety*, 237 Ariz. 484, 489 ¶ 20 (App. 2015) ("[This court] generally [does] not consider issues, even constitutional issues, raised for the first time on appeal.") (citations omitted).

¶9 Addressing the issue on the merits, Mother is correct in stating that Rule 58, which addresses "a proceeding to review the disposition orders of the court," does not apply to the trial testimony here. Nor does Rule 55(D), which addresses the presentation of evidence at a dependency trial generally, provide the answer. Mother is correct that Rule 41(E) affords the superior court the discretion, "[f]or good cause shown" after considering specified factors (including the best interests of the child), to "order any proceeding to be closed to the public." But the individual that Mother sought to exclude from the courtroom was Grandmother, who as A.C.'s placement, was a "participant" under Rule 37(B). So even if the superior court had granted Mother's request that the trial be closed to the public, such an order (without more) would not have excluded Grandmother from attending as a participant.

¶10 Rule 41(C) provides that the superior court "may limit the presence of a participant to the time of the participant's testimony" if it either (1) "is in the best interest of the child" or (2) "is necessary to protect the privacy interests of the parties and will not be detrimental to the child." Mother did not request that the hearing be closed in any respect until after she testified, for a time, with Grandmother present. Moreover, at no time did Mother's attorney or GAL cite to Rule 41(C), and Mother concedes on appeal that the record does not show that the superior court considered Rule 41(C). Accordingly, for this additional reason, Mother waived any

challenge she may have had to how her testimony proceeded. *See Louis C.*, 237 Ariz. at 489 ¶ 20.

**¶11**  If Mother had timely objected and cited Rule 41(C), there is no suggestion in the record that Mother's request was "necessary to protect the privacy interests of the parties," making Rule 41(C)(2) inapplicable. It is true that Mother's attorney and GAL stated that it was in Mother's best interests to testify outside of Grandmother's presence. And although such an avowal may have justified the superior court granting a request, such an avowal of counsel (without more) does not mean the superior court abused its discretion in denying such a request. Finally, and perhaps most importantly, Mother does not show on appeal how Grandmother's presence materially altered her relevant testimony. Even after the superior court denied the requests by Mother's attorney and GAL, both continued with their examinations of Mother as a witness. Moreover, the court expressly stated that the testimony that apparently caused concern about Grandmother's presence "is not really terribly relevant right now to the dependency issues." On this record, Mother has shown no reversible error.[4]

## II.  The Superior Court Did Not Err In Finding A.C. Dependent.

**¶12**  Mother argues the superior court erred in finding A.C. dependent "based on the case history and circumstances existing at the time of the trial." DCS had the burden to prove A.C. was dependent as to Mother by a preponderance of the evidence, A.R.S. § 8-844(C)(1), "based upon the circumstances existing at the time of the adjudication," *Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 50 ¶ 12 (App. 2016). This court reviews an order adjudicating a child dependent for an abuse of discretion, deferring to the superior court's ability to weigh and analyze the evidence. *Louis C.*, 237 Ariz. at 488 ¶ 12.

**¶13**  Mother argues she "made substantial progress towards reunification and resolving concerns before the dependency adjudication." Such progress, however, does not mandate a finding that A.C. was not dependent as to Mother. At trial, the DCS ongoing case manager testified that "[a]t this point in time" parenting concerns included "neglect, [Mother's] anger issues, some potential for physical abuse at this time." The reason A.C. and Mother were not living together at the time of trial was

---

[4] Mother is correct that the superior court's statement that, as placement, it "wouldn't be able to preclude [Grandmother] from being present anyway" is inconsistent with Rule 41(C). But on this record, Mother has not shown that inconsistency resulted in an abuse of discretion.

Mother's inability to care for A.C. The case manager testified that Mother "briefly engaged with parent aide services and reunification services briefly," but did not successfully complete either. The caseworker added that Mother "needs significant help in not only raising her child, parent skills, but also regulation of her emotions. . . And the service providers feel, as well as [DCS] . . ., that she needs help before reunifying the child with her." Absent those services, the caseworker agreed that A.C. "would be at serious risk of harm."

¶14　　　　There was conflicting evidence at trial. But it is not the role of this court to reweigh the trial evidence. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282 ¶ 12 (App.2002) (citing cases). On this record, the superior court properly concluded that the circumstances present at the time A.C. was removed from Mother's care remain unresolved at the time of trial. *See Shella H.*, 239 Ariz. at 51 ¶ 16. Accordingly, Mother has not shown that the superior court erred in finding A.C. was dependent as to Mother.

## CONCLUSION

¶15　　　　Because Mother has shown no reversible error, the dependency finding is affirmed.

