NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

D'ANDRE H., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, J.H., J.H., D.H., *Appellees.*

No. 1 CA-JV 17-0057
FILED 8-17-2017

Appeal from the Superior Court in Maricopa County
No. JD33410
The Honorable Nicolas B. Hoskins, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Czop Law Firm, PLLC, Higley
By Steven Czop
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Amber E. Pershon
*Counsel for Appellee DCS*

**MEMORANDUM DECISION**

Presiding Judge Michael J. Brown delivered the decision of the Court, in which Judge Kenton D. Jones and Judge Lawrence F. Winthrop joined.

**B R O W N**, Judge:

¶1          D'Andre H. ("Father") appeals the juvenile court's order adjudicating his three children dependent, asserting insufficient evidence supports the dependency order.  For the following reasons, we affirm.

## BACKGROUND

¶2          Father and Precious W. ("Mother") are the biological parents of J.H., born in 2008 ("J.U.H."), J.H., born in 2011 ("J.R.H."), and D.H., born in 2012.[1]  Mother and Father lived together from 2006 to 2011, and upon ending their relationship in 2012, attempted to follow an informal co-parenting agreement with shared custody of the children.  In late 2012, Father filed a petition for custody and parenting time in the family court, but the case was dismissed because he did not pursue it.

¶3          It is undisputed that Mother and Father have a long history of domestic violence, much of which has occurred in front of the children. Father moved to California in July 2013 "to get away from Mother," leaving the children in Mother's care but continuing to visit them, until he moved back to Arizona in April 2015.  Mother and Father offered conflicting narratives of the domestic violence – Mother contended she was always the victim, while Father asserted Mother was always the aggressor.  The police were called on several occasions, and Mother was arrested in one instance in December 2012.  Based on another incident in October 2015, Mother presented sufficient evidence to obtain an order of protection against Father.  Father then filed a second petition for custody and parenting time in the family court in October 2015.  As part of that proceeding, in May 2016, the family court issued temporary orders directing the parties to share equal, unsupervised parenting time.

---

[1]          The children were also found dependent as to Mother but she is not a party to this appeal.

**¶4** The Department of Child Safety ("DCS") became involved after receiving multiple reports of abuse, with most of those reports being initiated by Mother. DCS received the first report in April 2016 alleging that Father committed physical and sexual abuse of the children sometime in 2015 and January 2016. DCS investigated but the children were not removed and no dependency petition was filed. DCS received three more reports, one over the summer of 2016 and two in October 2016. The report in late October 2016 alleged Father physically injured J.U.H. (resulting in a bone bruise) during his Halloween weekend visitation period (October 28 through October 31).[2] Father did not deny J.U.H. had been in his care and custody at the time of the injury.

**¶5** DCS filed an in-home dependency petition in November 2016 as to both parents and placed the children in Mother's care. DCS alleged Mother failed to protect the children from Father's abuse. As to Father, DCS alleged (1) Father's home was unfit due to abuse and/or failure to protect the children from abuse and (2) Father was unwilling or unable to provide proper and effective parental care and control by exposing the children to domestic violence in the home.

**¶6** Several weeks later DCS filed a motion for change of physical custody to DCS, which the juvenile court granted because "evidence of physical abuse to one or more of the children and the medical

---

[2] Given the allegations of abuse, Mother sought and obtained an emergency temporary order from the family court awarding her sole legal decision-making authority and changing Father's parenting time from unsupervised to supervised. The court also appointed a court advisor ("CAA") to investigate and make best interests recommendations. The CAA interviewed Mother, Father, and law enforcement who was investigating the allegations of abuse. At the time of her report on October 26, 2016, before J.U.H. suffered the bone bruise injury, the CAA noted she was still investigating and would need to interview the children. Based on the interviews she had conducted, she stated there was insufficient evidence to conclude Father had physically abused the children because the "children's reporting of the abuse lacks the physical evidence to corroborate such severe abuse." Nevertheless, the CAA recommended Father's parenting time be supervised. The following day, October 27, the family court held an evidentiary hearing at which the CAA testified. The court affirmed its prior May 2016 order awarding shared, unsupervised parenting time, and appointed a best interests attorney for the children. That subsequent Halloween weekend, J.U.H. suffered the bone bruise injury.

documentation makes it unclear when the injuries likely occurred, which allows for the possibility that either parent could have inflicted the injuries." The children were then placed with their maternal grandmother.

¶7        At a contested dependency hearing in January 2017, the juvenile court heard testimony from Mother, Father, and a DCS caseworker. The court admitted several exhibits, including reports from DCS, law enforcement, and the family court. The court then adjudicated all three children dependent, reasoning in part as follows:

> 1.  It is undisputed that the child [J.U.H.] received an injury that resulted in a bruise on one of [the child's] ribs.
>
> 2.  Each parent accused the other of causing the injury, and denied having caused the injury.
>
> 3.  Neither parent, credibly or otherwise, offered a plausible alternative explanation for the injury.
>
> *        *        *
>
> Notwithstanding the breadth of testimony offered, it is unnecessary for the Court to determine which of the two parents caused the undisputed injury. Lacking a credible alternative explanation, the Court finds that one of the parents caused the injury, and one of the parents failed to protect [J.U.H.] from the injury. Both parents failed to protect the remaining children from experiencing the domestic violence of which [J.U.H.] was a victim.
>
> *        *        *
>
> [T]he allegations of the petition are true by a preponderance of the evidence and the children are dependent as to the mother and the father.

Father timely appealed.

## DISCUSSION

¶8        Father acknowledges that J.U.H. suffered a bone bruise injury; however, Father argues that other than Mother's unsubstantiated claims and coached statements from the children, no evidence shows that he injured J.U.H. or failed to protect the child from being injured.

**¶9** We review a dependency adjudication for abuse of discretion and accept the juvenile court's determination "unless no reasonable evidence supports it." *Louis C. v. Dep't of Child Safety*, 237 Ariz. 484, 488, ¶ 12 (App. 2015) (quoting *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235 (App. 2005)). As the trier of fact, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004). The court must consider those circumstances existing at the time of the adjudication hearing. *Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 50, ¶ 12 (App. 2016).

**¶10** DCS was required to prove the allegations of the dependency petition by a preponderance of the evidence. *Pima Cty. Juvenile Dependency Action No. 118537*, 185 Ariz. 77, 79 (App. 1994); *see also* Ariz. Rev. Stat. ("A.R.S.") § 8-844(C). A "[d]ependent child" is one who is "[i]n need of proper and effective parental care and control and who has no parent . . . willing to exercise or capable of exercising such care and control" or one "whose home is unfit by reason of abuse, neglect, cruelty or depravity by a parent." A.R.S. § 8-201(15)(a). "Abuse" is "the infliction or allowing of physical injury." A.R.S. § 8-201(2). "Neglect" is "[t]he inability or unwillingness of a parent . . . of a child to provide that child with supervision, food, clothing, shelter or medical care if that inability or unwillingness causes unreasonable risk of harm to the child's health or welfare." A.R.S. § 8-201(25)(a).

**¶11** Mother testified that the children were with Father over the 2016 Halloween weekend, Father dropped them off at school on Monday morning, October 31, and she picked them up from school at the end of the day. Mother stated that she quickly realized J.U.H. had been hurt because J.U.H. could not get undressed. Upon lifting J.U.H.'s shirt, Mother touched J.U.H.'s rib area and the child flinched. Mother testified that J.U.H. had a visible injury with swelling, and Mother immediately took J.U.H. to urgent care for medical treatment, and medical staff called the police. Mother stated that when she asked J.U.H. how the injury occurred, J.U.H. told Mother she was in the shower at Father's house with the bathroom door locked. J.U.H.'s younger half-sister (Father's child with his girlfriend) was trying to get into the bathroom but J.U.H. would not let her. When J.U.H. finished showering and walked out of the bathroom, Father punched her.

**¶12** As for the most recent incidents of domestic violence between Mother and Father, Mother testified she had obtained two orders of protection against Father. The first order, obtained in October 2015, stemmed from Mother's allegation that Father physically assaulted her and

J.R.H. during a visitation exchange. Mother acknowledged that although Father was charged with assault at the time, he was later acquitted. The second order of protection, in October 2016, was based on Mother's assertion that Father strangled D.H., despite a doctor observing no physical injury to D.H.

¶13         In contrast, Father testified that he never abused or hit the children and explained that it was Mother who used "corporal punishment, believed in belts and things like that." Father denied hurting J.U.H. and believed that the child received the bone bruise either playing or possibly that Mother inflicted the injury to get back at him. Father admitted that even though he believes the children are not safe in Mother's care, he never filed an order of protection against her to protect them from her. And, when he filed the petition for custody in 2012, Father admitted he did not pursue it because he did not "have it in my heart to take my kids away from their mother."

¶14         The DCS caseworker testified that DCS received a report that J.U.H. had been physically abused by Father over the 2016 Halloween weekend, resulting in a bone bruise injury as determined by a medical examination. According to the caseworker, DCS believed Father injured J.U.H. because the children had unsupervised contact with him that weekend and all three children said Father hit J.U.H. The caseworker also stated that D.H. said Father pushed him and grabbed his neck. The caseworker admitted she had concerns that Mother coached the children to make those statements. But none of the children recanted their statements of abuse at the hands of Father and, despite J.U.H. telling Father during a supervised visit she knew he did not break her ribs, she did not say Father did not hit her.

¶15         The caseworker further explained that DCS believes either Mother or Father caused physical injury to at least one of the children, and, in either case, the other parent failed to protect them. The caseworker acknowledged that aside from J.U.H.'s bone bruise injury, all the allegations made by Mother against Father have been litigated in the family court case and found to be untrue. Nevertheless, the caseworker stated that the dependency as to Father is based on the children's statements of physical abuse, for which no other explanation has been given.

¶16         Moreover, the caseworker testified that the children have told her they are afraid of Father coming to their home, living in a state of fear that something is going to happen. She explained that the children have been referred to therapy and, based upon their fears expressed to her

personally and as noted during the supervised visits, she believes they need to continue therapy before being returned to either parent's home as they would possibly suffer more trauma if returned earlier.

¶17        Based on this record, reasonable evidence supports the juvenile court's conclusion that DCS proved by a preponderance of the evidence that Father either caused J.U.H.'s injury, or failed to protect the child from injury, and failed to protect all three children from domestic violence.

## CONCLUSION

¶18        We affirm the juvenile court's order finding J.U.H., J.R.H., and D.H. dependent as to Father.



AMY M. WOOD • Clerk of the Court
FILED:  AA