IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

---

LOUIS C.,
*Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY AND J.C.,
*Appellees*.

No. 2 CA-JV 2014-0127
Filed June 24, 2015

---

Appeal from the Superior Court in Pima County
No. JD20140107
The Honorable Geoffrey L. Ferlan, Judge Pro Tempore

**AFFIRMED**

---

COUNSEL

The Law Office of Mark F. Willimann, LLC, Tucson
By Mark F. Willimann
*Counsel for Appellant*

Mark Brnovich, Arizona Attorney General
By Laura J. Huff, Assistant Attorney General, Tucson
*Counsel for Appellee Department of Child Safety*

---

## OPINION

Judge Espinosa authored the opinion of the Court, in which Presiding Judge Miller and Chief Judge Eckerstrom concurred.

---

E S P I N O S A, Judge:

**¶1**    Louis C. appeals from the juvenile court's order adjudicating his twelve-year-old son, J.C., dependent as to him. For the following reasons, as well as those expressed in a separate memorandum decision,[1] we affirm the court's order.

### Background

**¶2**    "On review of an adjudication of dependency, we view the evidence in the light most favorable to sustaining the juvenile court's findings." *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, ¶ 21, 119 P.3d 1034, 1038 (App. 2005). Louis was awarded full custody of J.C. in 2008 or 2009, with provisions for J.C.'s regular contact with his mother, Marcia R.,[2] who now lives in Texas. Puerto Rico's child protective services had once been involved with the family after Louis had left "some type of mark" on J.C. while spanking him; Louis reported that he "completed services" related to those proceedings.

**¶3**    On February 7, 2014, Louis learned that J.C. had failed to turn in eight school assignments and was failing a class. Louis telephoned J.C. and told him he "would be getting eight straps [with

---

[1]Because our resolution of other issues Louis raises on appeal does not meet the criteria for publication, we have addressed those issues in a separate memorandum decision pursuant to Rule 111(h), Ariz. R. Sup. Ct., Rule 28(c), Ariz. R. Civ. App. P., and Rule 103(G), Ariz. R. P. Juv. Ct.

[2]The juvenile court found J.C. dependent as to both parents; Marcia is not a party in this appeal.

a belt] for missing eight assignments" and "would get eight straps every[ ]day until the assignments were turned in." When Louis got home, he got a belt and told J.C. to bend over and place his hands on his bed. J.C. bent over slightly but did not brace himself as instructed, and he fell down after the first blow from the belt. Louis continued to strike him while telling him to "get up." By the time the punishment was over, Louis had struck J.C. more than eight times on his back and buttocks, the front and back of his legs, and on his hands, which he had raised defensively.

¶4          When Louis had left the house, J.C. telephoned Marcia, and she told him to call 9-1-1. After two Tucson Police Department officers arrived, one of them contacted Louis and he returned home. Louis denied hitting J.C. and was detained and transported to a police station; meanwhile, J.C. was taken to the Children's Advocacy Center (CAC). The officers remained with J.C. while photographs were taken and observed "several marks and bruises consistent with those made by a belt" on his back, buttocks, and legs. J.C. told a CAC interviewer that the blows had felt like "fire on him" and he was scared, explaining Louis had struck him hard, raising the belt over his head or to his side to deliver the blows. He said he "gets the strap" when he gets in trouble—the last time before this in June 2013—but this time it had been more "severe," and the blows had not been confined to his buttocks and hips. He recalled another time when a "giant black/red mark was left on his buttocks" after Louis hit him.

¶5          A detective arrived after the photographs were taken, looked at the images contained on the photographer's camera, and observed from another room while J.C. was interviewed. He later testified that photographs admitted at the dependency hearing were among those he had seen on the camera, and he identified several bruises or red marks that appeared to be "changing to . . . bruise[s]" on J.C.'s back, thighs, and buttocks that were consistent with bruises caused by "a belt type object." According to the detective, based on his experience and training in Arizona law, the marks left on J.C. evinced conduct that "[went] beyond" reasonable or appropriate discipline and fell within "the realm of child abuse." He presented

the information to the Pima County Attorney's Office, and Louis was arrested on a charge of child abuse.

¶6        The Department of Child Safety (DCS)[3] took temporary custody of J.C. that day, and, on February 12, filed a dependency petition alleging J.C. was dependent "due to abuse and/or neglect." Specifically, the petition alleged that Louis had been arrested after he "hit [J.C.] with a belt several times," and that, on the date the petition was filed, "there [was] a no-contact order in place between [Louis] and [J.C.]." Similarly, in her preliminary protective hearing report, a DCS specialist informed the juvenile court that Louis "was released from [custody] on 02/10/14" and "[o]ne of [his] conditions of release [wa]s no contact of any kind with [J.C.]."

¶7        A five-day contested dependency hearing commenced on June 2, 2014. The DCS investigator and ongoing case manager testified, as the detective had, that the marks and bruises observed on J.C.'s body constituted evidence of physical abuse. Louis testified he had given J.C. eight "light to moderate swats across his butt" with a belt as punishment for the eight missed assignments, and he denied striking J.C. on any other part of his body or while he was on the floor. He said he disciplined J.C. with corporal punishment only "on occasion" and believed such discipline was required in this instance to "instill in him the concept[s] of honesty, integrity and responsibility." DCS and Louis both rested their cases on June 19, 2014.

¶8        On July 1, the Pima County Superior Court granted Louis's motion to remand his criminal case to the grand jury for a new finding of probable cause. On July 9, 2014, the Pima County Attorney's Office wrote to Louis's criminal defense attorney to inform him that, during a July 3 meeting, J.C. said he had fallen off his skateboard and bruised his left side and leg three days before he

---

[3]DCS has been substituted for the Arizona Department of Economic Security (ADES) in this matter. *See* 2014 Ariz. Sess. Laws 2d Spec. Sess., ch. 1, §§ 6, 20, 54; Ariz. R. Civ. App. P. 27; Ariz. R. P. Juv. Ct. 103(G). For simplicity, references to DCS encompass both ADES and Child Protective Services, formerly a division of ADES.

had called 9-1-1, but he could not describe the location of those bruises. J.C. confirmed that Louis had "hit him with the belt," as he had reported in February, but told the prosecutors, "[T]hat was discipline[,] not child abuse"; he said he had been "mad and wanted to go with [his] mom[,] but he was in the wrong because he was flunking science." On July 10, Louis appeared before a new grand jury, which declined to indict him a second time, and the criminal case was dismissed without prejudice.

¶9            When the dependency hearing resumed on August 7, the juvenile court denied Louis's motion to dismiss the dependency petition in light of the grand jury's "no bill." The parties stipulated to the admission of the prosecutor's July 9 letter to criminal defense counsel, the minutes of the July 11 grand jury proceedings, and a discharge summary from an agency initially assigned to provide services to Louis. In the discharge summary, a program coordinator reported Louis "did not demonstrate progress in meeting his treatment goals due to his statements that he did not commit domestic violence and he does not need group counseling and his lack of accountability regarding his current situation."

¶10           After the juvenile court took the matter under advisement, Louis filed a request for an expedited ruling and findings of fact, specifically asking the court to determine "[w]hether the initial [DCS] removal was based on a finding of imminent harm to the minor or the unavailability of a parent during the four days [Louis] was in custody" and "[w]hether the defenses available in A.R.S. § 13-205 apply to Dependency cases." In its ruling, the court found DCS had proven, by a preponderance of the evidence, that J.C. was dependent as to Louis. Apparently in response to Louis's request, the court also found that (1) "its decision regarding the initial removal was based on both the unavailability of a parent while [Louis] was incarcerated and the risk of imminent harm to [J.C.]," and (2) "to the extent that any affirmative defense or justification set forth under A.R.S. § 13-205 and A.R.S. § 13-403 et. seq. may legally be used by [Louis], the facts do not support their application given the circumstances, including the inappropriate and unreasonable use of force which was used by [Louis] in disciplining [J.C.]." This appeal followed.

## Discussion

**¶11** Louis argues on appeal that the juvenile court abused its discretion in "refusing to apply A.R.S. § 13-403" to find his use of physical force against J.C. was justified and therefore not a viable basis for J.C.'s adjudication of dependency. He also maintains the court erred in adjudicating J.C. dependent based on a preponderance of the evidence, rather than requiring proof "beyond a reasonable doubt," pursuant to A.R.S. § 13-205, or some other, "higher burden of proof," consistent with A.R.S. §§ 1-601 and 1-602.

**¶12** We review a dependency order for a "clear abuse of discretion." *In re Pima Cnty. Juv. Action No. 93511*, 154 Ariz. 543, 546, 744 P.2d 455, 458 (App. 1987). And, "[g]enerally, the decision of the juvenile court as to the weight and effect of evidence will not be disturbed unless it is clearly erroneous." *In re Maricopa Cnty. Juv. Action No. J-75482*, 111 Ariz. 588, 591, 536 P.2d 197, 200 (1975). Thus, we will not disturb a dependency adjudication for insufficient evidence "unless no reasonable evidence supports it." *Willie G.*, 211 Ariz. 231, ¶ 21, 119 P.3d at 1038. But we review de novo legal issues that require the juvenile court to interpret and apply a statute or procedural rule. *Manuel M. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 205, ¶ 18, 181 P.3d 1126, 1131 (App. 2008). We also "review de novo the legal question of whether the court applied the proper burden of proof." *Parker v. City of Tucson*, 233 Ariz. 422, ¶ 11, 314 P.3d 100, 106 (App. 2013).

### Sufficiency of the Evidence

**¶13** The statutory definition of a dependent child includes one "[i]n need of proper and effective parental care and control . . . who has no parent . . . willing to exercise or capable of exercising such care and control," as well as one whose "home is unfit by reason of abuse, neglect, cruelty or depravity by a parent." A.R.S. § 8–201(14)(a)(i), (iii). "Abuse," as defined in § 8-201(2), includes "the infliction or allowing of physical injury." "Physical injury" is not defined in § 8–201, but for the purpose of criminal child abuse, physical injury "means the impairment of physical condition and includes," for example, "any skin bruising." A.R.S. § 13–3623(F)(4); *see also State v. Albrecht*, 158 Ariz. 341, 344, 762 P.2d 628, 631 (App.

1988) (evidence of "extensive bruising" on four-year-old's buttocks sufficient to establish child abuse beyond a reasonable doubt).

¶14     As detailed in the juvenile court's ruling, the record supports its determination that a preponderance of the evidence established J.C. had suffered physical abuse and was dependent as to Louis. To the extent Louis challenges the court's resolution of disputed facts, we will not reweigh that evidence on review. *See Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, ¶¶ 4, 14, 100 P.3d 943, 945, 947 (App. 2004) (juvenile court, as trier of fact, in "best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts").

**Justification**

¶15     Louis contends the juvenile court abused its discretion in "refusing to apply" A.R.S. §§ 13-205, 13-403, and 13-413 to find that his punishment of J.C. was "justified" and precluded a determination that J.C. was dependent as to Louis on the ground of abuse. In essence, Louis argues that, had the court applied these statutes in the manner he requested, the evidence would have been insufficient to support the court's adjudication of dependency. We disagree.

¶16     Addressing criminal culpability, § 13-403(1) provides "[a] parent . . . entrusted with the care and supervision of a minor . . . may use reasonable and appropriate physical force upon the minor . . . to the extent reasonably necessary and appropriate to maintain discipline." Section 13-413 further provides that "[n]o person . . . shall be subject to civil liability for engaging in conduct otherwise justified" pursuant to a justification defense.

¶17     Relying on *Arizona State Department of Public Welfare v. Barlow*, 80 Ariz. 249, 252, 296 P.2d 298, 300 (1956), DCS maintains protection of the child is the sole objective of a dependency proceeding. And, relying on *Black's Law Dictionary* 416, 933 (8th ed. 2004), it argues a dependency adjudication does not implicate a parent's "civil liability" under § 13-413 because it does not create an obligation to pay money damages, as compensation for another's loss or injury.

¶18       In its ruling, the juvenile court apparently concluded it did not need to decide this legal issue, finding that, to the extent a justification defense may be available in a dependency proceeding, it would not apply in this case, "given the circumstances, including the inappropriate and unreasonable use of force" Louis used in disciplining J.C. We find no abuse of discretion in the court's resolution of this primarily factual issue, and its findings are supported by reasonable evidence in the record. *Cf. Pima Cnty. No. 93511*, 154 Ariz. at 546, 744 P.2d at 458 (juvenile court "in the best position to weigh the evidence, judge the credibility of the parties, observe the parties, and make appropriate factual findings").

**Burden of Proof**

¶19       Relying on A.R.S. §§ 1-601, 1-602, and 13-205(A), Louis also argues the juvenile court applied the wrong burden of proof in finding a preponderance of the evidence established J.C. is dependent. Specifically, related to his argument that his conduct was justified under §§ 13-403 and 13-413, Louis argues that because he is J.C.'s father, DCS was required, under § 13-205(A), "to prove 'beyond a reasonable doubt' that [he] was not justified under A.R.S. § 13-403 to use force against J.C." In addition, he contends determining a child's dependency based on "a mere 'preponderance of the evidence'" is incompatible with the Arizona legislature's 2010 enactment of a "Parent[s'] Bill of Rights" in §§ 1-601 and 1-602, which recognizes a parent's fundamental right to direct his child's upbringing. He suggests "a higher burden of proof" is required in light of this legislation.

¶20       DCS correctly observes that Louis failed to raise an argument regarding § 13-205(A) in the juvenile court. "[W]e generally do not consider issues, even constitutional issues, raised for the first time on appeal." *Englert v. Carondelet Health Network*, 199 Ariz. 21, ¶ 13, 13 P.3d 763, 768 (App. 2000). In reviewing a termination of parental rights, however, this court has reviewed claims not raised below for fundamental error "[b]ecause of the constitutional ramifications inherent" in those proceedings. *Monica C. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 89, ¶ 23, 118 P.3d 37, 42 (App. 2005). Assuming, without deciding, that fundamental error review is also available to a parent challenging a dependency

adjudication, based on an argument first raised in this court, we find no error, much less fundamental error, in the court's adjudication of dependency based on a preponderance of the evidence.

**¶21** In A.R.S. § 8-844(C), the legislature has expressly directed that a juvenile court "shall" enter a finding of dependency if it "[f]inds by a preponderance of the evidence that the allegations contained in the petition are true."[4] Louis presents no basis for this court to ignore that specific, unambiguous direction in favor of § 13-205(A), which provides "the state must prove beyond a reasonable doubt that the defendant did not act with justification" when a criminal defendant has presented evidence that his otherwise criminal conduct was justified. *See Thomas v. Goudreault*, 163 Ariz. 159, 172, 786 P.2d 1010, 1023 (App. 1989) (specific statute addressing issue "must govern over a more general statute which arguably could be applicable").

**¶22** As we explained in *Pfeil v. Smith*, 183 Ariz. 63, 66, 900 P.2d 12, 15 (App. 1995), the requirement that the state prove a criminal defendant's lack of justification beyond a reasonable doubt is inapplicable to civil cases. Under § 13-413, justification may "be the basis for an affirmative defense in a civil suit," but a civil defendant still has the burden to prove justification by a preponderance of the evidence. *Id.* Although *Pfeil* was decided before the legislature enacted § 13-205, its reasoning remains sound. The legislature's specification, in § 13-205, of what "the state" must prove, and the location of the statute in chapter 2 of the criminal code, titled "General Principles of Criminal Liability," belie any suggestion that the legislature intended to shift or alter the burden of proof when a parent argues, in a dependency proceeding, that physical discipline of a child was reasonable and justified.

---

[4]Although Louis cites § 8-844 elsewhere in his opening brief, he omits any reference to § 8-844(C) in his arguments on appeal. Appellate counsel is reminded of his ethical duty of "Candor Toward the Tribunal," ER 3.3(a), Ariz. R. Prof'l Conduct, Ariz. R. Sup. Ct. 42, which requires "disclos[ure] to the tribunal [of] legal authority in the controlling jurisdiction known to [him] to be directly adverse to the position of [his] client."

¶23 For similar reasons, we reject Louis's argument that determining a child's dependency based on a preponderance of the evidence is inconsistent with the legislature's recognition, in enacting §§ 1-601 and 1-602, that parental rights are "fundamental" in nature. More than thirty years ago, our supreme court recognized "the fundamental right of a parent to the custody and control of his or her child," but held, based on the same arguments Louis raises here, "the preponderance of the evidence standard is the proper standard of proof in dependency proceedings." *In re Cochise Cnty. Juv. Action No. 5666-J*, 133 Ariz. 157, 158-59, 650 P.2d 459, 460-61 (1982). The legislature codified that standard in § 8-844(C), and did not change it when it enacted the Parents' Bill of Rights, which expressly provides:

> This section does not authorize or allow a parent to engage in conduct that is unlawful or to abuse or neglect a child in violation of the laws of this state. This section does not prohibit courts, law enforcement officers or employees of a government agency responsible for child welfare from acting in their official capacity within the scope of their authority. This section does not prohibit a court from issuing an order that is otherwise permitted by law.

§ 1-602(B). Section 8-844(C) not only permits a court to enter an order of dependency based on a preponderance of the evidence, but directs that a court "shall" do so. In applying that standard here, the juvenile court issued an order expressly authorized by §§ 1-602(B) and 8-844(C).

## Disposition

¶24 The juvenile court applied the correct evidentiary standard in adjudicating J.C. dependent, and its factual findings are supported by the record. Accordingly, its ruling is affirmed.