NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

MELISSA W., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, S.A., E.A., W.A., *Appellees*.

No. 1 CA-JV 15-0297
FILED 1-14-2016

---

Appeal from the Superior Court in Maricopa County
No. JD510426
The Honorable Shellie F. Smith, Judge *Pro Tempore*

**AFFIRMED**

---

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Laura J. Huff
*Counsel for Appellees*

---

**MEMORANDUM DECISION**

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Patricia A. Orozco joined.

---

**J O N E S**, Judge:

¶1   Melissa W. (Mother) appeals the juvenile court's order adjudicating S.A., E.A., and W.A. (the Children) dependent on the ground of neglect.[1]  Because the record contains reasonable evidence to support the court's order, we affirm.

**FACTS[2] AND PROCEDURAL HISTORY**

¶2   In January 2015, the Department of Child Safety (DCS) received a report that one of the Children arrived at school with green bruising under his eye and had told three different stories about how he received it.  The report also alleged the Children were frequently absent from or tardy in arriving at school and often arrived in dirty uniforms smelling of smoke and cat urine without having been properly bathed.  Because the Children's clothes were so dirty, the school frequently had them change into clean uniforms upon their arrival, and they would change back into their clothes before going home.

¶3   In February 2015, police received another report from the Children's school alleging the Children's odor was so strong that "classes [were] often disrupted."  At times, the school had to provide the Children with new underwear and socks because they arrived at school not wearing any.  A police officer visited the Children's home to investigate and, when Mother opened the door, "noticed a terrible odor coming from the

---

[1]  The Children were also adjudicated dependent as to their father. However, he did not dispute this determination and is not a party to this appeal.

[2]  "On review of an adjudication of dependency, we view the evidence in the light most favorable to sustaining the juvenile court's findings."  *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235, ¶ 21 (App. 2005) (citing *Maricopa Cnty. Juv. Action No. JD-5312*, 178 Ariz. 372, 376 (App. 1994)).

apartment."  Mother did not allow the officer inside but, in the course of their discussion, told the officer she had declined both clothing donations from the school and an offer from Tempe's Care 7 Crisis Team to clean her apartment because she was afraid of DCS and the police.  The officer arrested Mother on two outstanding warrants: one for child delinquency and one for violating probation conditions from a prior neglect case.

¶4        Police searched Mother's home and found it to be "in poor condition for children to be living in."  Police found cigarette butts, cat litter, and cat feces littering the apartment floor, and the Children's dirty clothes were found on the floor in the corner of their room.  DCS took temporary custody of the Children and placed them in foster care.

¶5        Following the removal, DCS discovered Mother had failed to provide for the oldest child's medical needs which included a serious kidney disease, spina bifida, and warts; had not addressed serious behavioral issues of the oldest two children; was not properly addressing the second child's academic delays; and had not addressed the youngest child's severe speech problems.  Further investigation revealed the Children had been absent, tardy, or picked up from school early more than fifty times in the past year.

¶6        DCS filed a petition alleging the Children were dependent as to Mother as a result of neglect.  At the hearing, DCS case managers testified to the deficiencies of Mother's care for the Children's medical, behavioral, academic, and social needs.  Mother also testified, asserting she was able to care for the Children and offering various explanations for the issues DCS had identified.  Mother's neighbor also testified that, from January to February 2015, he had seen the Children leave their apartment in the mornings and did not observe the Children to be dirty.

¶7        After taking the matter under advisement, the juvenile court issued an order finding DCS had proven by a preponderance of the evidence the Children were dependent as to Mother on the ground of neglect.  Mother timely appealed.  We have jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 8-235(A),[3] 12-120.21(A)(1), -2101(A)(1), and Arizona Rule of Procedure for the Juvenile Court 103(A).  *See Yavapai Cnty. Juv. Action No. J8545*, 140 Ariz. 10, 14 (1984) (holding

---

[3]        Absent material changes from the relevant date, we cite a statute's current version.

"orders declaring children dependent . . . are final orders subject to appeal by aggrieved parties").

## DISCUSSION

**¶8**        Mother argues the juvenile court erred in finding the Children dependent, asserting her testimony and that of her witness precluded a finding of dependency.   A finding of dependency requires proof by a preponderance of the evidence.  *See* A.R.S. § 8-844(C)(1).  We review an order adjudicating a child dependent for an abuse of discretion, deferring to the juvenile court's ability to weigh and analyze the evidence. *Louis C. v. Dep't of Child Safety*, 237 Ariz. 484, 488, ¶ 12 (App. 2015) (quoting *Maricopa Cnty. Juv. Action No. J-75482*, 111 Ariz. 588, 591 (1975), and *Pima Cnty. Dependency Action No. 93511*, 154 Ariz. 543, 546 (App. 1987)).   We will therefore only disturb a dependency adjudication if no reasonable evidence supports it.  *Id.* (quoting *Willie G.*, 211 Ariz. at 235, ¶ 21).

**¶9**        As relevant here, a dependent child is one who is "[i]n need of proper and effective parental control and . . . has no parent or guardian willing to exercise or capable of exercising such care and control," or "whose home is unfit by reason of abuse, neglect, cruelty or depravity by a parent, a guardian or any other person having custody or care of the child." A.R.S. § 8-201(14)(a)(i), (a)(iii).   Neglect is defined as "[t]he inability or unwillingness of a parent, guardian or custodian of a child to provide that child with supervision, food, clothing, shelter or medical care if that inability or unwillingness causes unreasonable risk of harm to the child's health or welfare."  A.R.S. § 8-201(24)(a).

**¶10**        In adjudicating the Children dependent as to Mother on the grounds of neglect, the juvenile court made and relied upon the following findings:

- Mother was arrested on an outstanding criminal warrant.

- The Children were living in "unsanitary and filthy conditions" which presented a safety risk to the Children.

- The Children regularly dressed in unclean clothing and were not bathed regularly.

- Mother did not ensure the Children attended school regularly and was charged with truancy and neglect as a result of the Children's excessive absences, and two of the Children needed remedial services because they were behind academically.

- Mother did not provide consistent medical care for an ongoing medical condition suffered by one of the Children, and she failed to recognize two of the Children's need for behavioral health services and counseling.

- Mother was unable to demonstrate she had made permanent behavioral changes necessary to safely parent her Children despite "the plethora of services that were made available to Mother . . . during [a] prior dependency."

These findings are supported by the evidence and we will not second-guess the court's assessment of the evidence presented. *See Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 234, ¶ 13 (App. 2011) ("The juvenile court is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings.") (citing *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002)).

**¶11**　　　　Viewing the evidence in the light most favorable to upholding the juvenile court's ruling, we conclude reasonable evidence was presented to support its determination that the Children are dependent as to Mother.

## CONCLUSION

**¶12**　　　　The order of the juvenile court adjudicating the Children dependent as to Mother is affirmed.



Ruth A. Willingham · Clerk of the Court
FILED: ama

5