NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JARED D., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, G.W., *Appellees*.

No. 1 CA-JV 18-0498
FILED 9-5-2019

Appeal from the Superior Court in Maricopa County
No. JD21132
The Honorable Jo Lynn Gentry, Judge

**AFFIRMED**

COUNSEL

John L. Popilek PC, Scottsdale
By John L. Popilek
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Doriane F. Zwillinger
*Counsel for Appellee Department of Child Safety*

_____

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Maria Elena Cruz joined.

_____

**C A T T A N I**, Judge:

¶1            Jared D. ("Father") appeals the superior court's order finding his child G.W. dependent.  For reasons that follow, we affirm.

**FACTS AND PROCEDURAL BACKGROUND**

¶2            Father and Evelyne W. ("Mother") are married and have had six children together.  Their parental relationships to five of the six children have previously been terminated.  This case involves their sixth child, born after the other children had been removed from Father and Mother's home.

¶3            Mother has a 10-year history of substance abuse, including an addiction to opiates.  In August 2018, Mother, while on methadone, gave birth to G.W. at home.  Mother did not seek medical treatment for G.W. even though G.W. was born premature, in breech, and at risk for methadone withdrawal symptoms.  Father was living with Mother but took no protective action.  The Department of Child Safety ("DCS") subsequently took custody of G.W. and filed a dependency petition.

¶4            In October 2018, Mother agreed to move out of the home so Father could regain physical custody of G.W. and participate in an in-home dependency.  But when the case manager arrived at Father's home with G.W., the residence smelled of marijuana, and Father told the case manager that Mother, who holds a medical marijuana card, may have smoked marijuana while he was sleeping.  The case manager instructed Father to air out the home, and he did so.  DCS placed G.W. with Father on October 31, with Father agreeing to a safety plan requiring that only he reside in the home, that Mother only be in the home with service providers present, and that Father not supervise any contact between Mother and G.W.  DCS approved only the children's grandparents as alternate caregivers while Father worked.

¶5            Two weeks later, DCS resumed custody of G.W. after Father failed to follow the safety plan by leaving G.W. with an unapproved caregiver on multiple occasions.  In November 2018, the court found G.W.

dependent and set a case plan of family reunification, concurrent with severance and adoption. Father timely appealed the dependency finding, and we have jurisdiction under A.R.S. § 8-235(A).

**DISCUSSION**

**¶6** A superior court's dependency finding must be supported by a preponderance of the evidence. *Louis C. v. Dep't of Child Safety*, 237 Ariz. 484, 490, ¶ 23 (App. 2015). A dependent child is one who is adjudicated to be "in need of proper and effective parental care and control and who has no parent . . . willing to exercise or capable of exercising such care and control," or a child "who is not provided with the necessities of life, including adequate food, clothing, shelter or medical care." A.R.S. § 8-201(15)(a)(i), (ii). We review the court's dependency determination for an abuse of discretion and will uphold the court's findings if it is supported by reasonable evidence. *Louis C.*, 237 Ariz. at 488, ¶ 12. We defer to the superior court's resolution of factual issues because that court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004).

**¶7** Father first argues that the superior court failed to make specific findings of fact as required by the juvenile court rules. A superior court order adjudicating a child dependent must "[s]et forth specific findings of fact in support of a finding of dependency." Ariz. R.P. Juv. Ct. 55(E)(3). The primary purpose of this rule is "to allow the appellate court to determine exactly which issues were decided and whether the lower court correctly applied the law." *Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 240, ¶ 24 (App. 2012). Accordingly, findings should be sufficiently specific to "enable the appellate court to provide effective review," but the specificity required may vary depending on the complexity of the case. *See id.* at 241, ¶¶ 25, 27. The superior court is not required to list every fact upon which its findings are based, and this court will uphold the findings "if supported by adequate evidence in the record." *Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 451–52, ¶ 19 (App. 2007) (citation omitted).

**¶8** Here, the superior court found that Father failed to obtain appropriate medical care for G.W. following her at-home birth. Father "allowed [M]other to parent [G.W.,] [a] vulnerable child[,] even though [M]other's parental rights to five other children were previously terminated due to [her] substance abusing lifestyle" and even though Mother had not sought appropriate treatment for her substance-abuse issues. Father argues

that the court's findings erroneously focus solely on the time of the dependency petition as opposed to the circumstances existing at the time of the dependency hearing. But the findings show that the dependency was based on Father's inability or unwillingness to supervise and protect G.W., particularly from Mother, and the evidence supports the court's conclusion as of both the date of the dependency petition and the date of the dependency hearing.

¶9 Father further argues that DCS did not prove that he violated the safety plan or that his conduct otherwise supported a dependency finding. But G.W. was born at home, reportedly because Mother wanted to avoid DCS involvement. And although G.W. was at risk of potentially serious withdrawal symptoms from methadone after her birth, Father and Mother did not obtain post-partum care for her.

¶10 DCS presented additional evidence regarding concerns about Father's ability to protect G.W. from Mother. For example, the case manager noted that Mother was continuing her use of medical marijuana while also being prescribed opiates. And although Mother had tested negative for opiates, the fact that she was prescribed approximately 120 pills per month raised safety concerns regarding Mother's likelihood to place G.W. in danger. Despite this, Father testified that Mother's use of opiates had not affected her ability to parent.

¶11 Moreover, a few weeks after dropping G.W. off with Father, DCS received a report that Father had gone to work without leaving G.W. with her approved caregivers—her grandparents. The case manager confirmed with Father that he worked the day in question, and although Father claimed that he left G.W. with her grandparents that day, the grandparents told the case manager "we're not going to lie for [the parents]. . . . [G.W.] was not here on Saturday." Father testified that the grandparents had in fact provided childcare for G.W. that day and simply did not recall having done so. But the superior court was in the best position to assess Father's explanation, and we defer to that court's resolution of conflicting evidence. *Oscar O.*, 209 Ariz. at 334, ¶ 4. And while Father denied that he allowed Mother to be alone with G.W., he also told the case manager that "he wanted to be honest with [her], but he had to also listen to [Mother]." From this evidence, the superior court could reasonably find that Father violated the safety plan and failed to arrange proper supervision for G.W. by leaving her with Mother or another unapproved caregiver.

¶12 DCS also noted a concern regarding Father's ability to independently parent G.W. When the case manager visited Father's home,

4

Father told her he was "overwhelm[ed]," the home was very messy, and G.W. was wearing a diaper that was too small for her. Father later told the case manager that caring for G.W. had been "too much" and asked if things could go "back to the way it was before" when she was in foster care. Additionally, the case manager noted that Father "seem[ed] to defer to [Mother] for everything." For instance, Father would not "answer anything without talking to [Mother] first" and told the case manager that he had never wanted Mother to move out of the home. Ultimately, the case manager testified that Father's barriers to parenting at the time of the dependency hearing included his over-reliance on Mother and his lack of "understanding of the problem, the issues that brought his child into care and his [in]ability to speak up and defend his children [from] their Mother." Thus, competent evidence established that Father failed to provide G.W. with necessary medical care or exercise proper and effective parental care and control.

**CONCLUSION**

¶13         We affirm the order adjudicating G.W. a dependent child.

