NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

MAUREEN L., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, T.R., O.R., *Appellees*.

No. 1 CA-JV 20-0232
FILED 1-19-2021

Appeal from the Superior Court in Mohave County
No. L8015JD202007014
The Honorable Steven C. Moss, Judge

**VACATED AND REMANDED**

COUNSEL

Law Office of Florence M. Bruemmer PC, Anthem
By Florence M. Bruemmer
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellees*

---

## MEMORANDUM DECISION

Judge Cynthia J. Bailey delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Lawrence F. Winthrop joined.

---

**B A I L E Y**, Judge:

**¶1**          Maureen L. ("Mother") appeals from the juvenile court's dependency order as to her two daughters.  Because reasonable evidence does not support the court's dependency order, we vacate the order and remand to the juvenile court for further proceedings.

### FACTS[1] AND PROCEDURAL HISTORY

**¶2**          Mother and Darren R.[2] ("Father") are the biological parents of T.R., born in December 2004, and O.R., born in October 2007.  After Mother and the children moved to Arizona in 2013, Mother married Ramon L. ("Step-Father") in 2016.

**¶3**          O.R. told T.R. one day that Step-Father had "touched her and it made her feel uncomfortable," and she drew a picture to illustrate where Step-Father touched her.  T.R. immediately went to Mother, brought her the picture, and told her what O.R. had said.  Mother then confronted Step-Father.  After Step-Father denied any inappropriate contact with O.R., Mother gathered the family members to discuss the allegations and establish "boundaries"  for O.R.'s interactions with Step-Father.  O.R. also disclosed the abuse to a friend.  That friend notified authorities, and the police and the Department of Child Safety ("DCS") came to the house that same night.

**¶4**          After police and DCS interviewed Step-Father, O.R., and T.R., police took O.R., T.R., and Mother to a crisis center, where O.R. was forensically interviewed.  At that time, O.R. said that Step-Father had

---

[1] "On review of an adjudication of dependency, we view the evidence in the light most favorable to sustaining the juvenile court's findings." *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235, ¶ 21 (App. 2005).

[2]  At the dependency hearing, Father entered a no contest plea as to the allegations in the petition.  He is not a party to this appeal.

touched her on her breast and near her genital area while they were lying in his bed together. When police interviewed Mother, she expressed skepticism regarding O.R.'s allegations. DCS took custody of both O.R. and T.R. that night.

¶5 Less than a week later, DCS filed a dependency petition for both girls as to Mother. The petition alleged two grounds: (1) Mother was unwilling or unable to provide proper and effective parental care and control by neglecting to provide a safe and stable home and proper supervision, and (2) Mother's home was unfit due to abuse. The factual basis for both grounds were the same: Mother had allowed Step-Father to remain in the family home after she learned of O.R.'s allegations, and Mother did not believe O.R.'s allegations, and these actions placed both girls at risk. A few days later, after meeting with DCS, Mother obtained an order of protection against Step-Father for both girls, and Step-Father left the home.

¶6 During a three-day dependency hearing, the juvenile court heard from DCS case specialist Kelli Leahy, T.R., O.R.'s counselor, and Mother, and interviewed O.R. in chambers. Leahy testified that at the time of removal, DCS was concerned that Mother did not believe O.R. and was defending Step-Father. Because Mother, maternal grandmother, and T.R. had expressed doubts during the dependency about O.R.'s veracity, DCS feared that if the family were reunited, O.R. would be less likely to report any future abuse by Step-Father. Leahy acknowledged Mother's efforts to mitigate some of DCS's concerns, including that she had engaged in services, completed a parenting class and a psychological evaluation, and engaged in individual and family counseling sessions with O.R. Leahy testified that Mother recognized the children's needs and was positively attached to both girls. She further testified that although Step-Father was not present in the family home, DCS remained concerned that Mother continued to have a relationship with him.

¶7 T.R. testified Step-Father no longer lived in the family home and expressed a desire to return home to Mother. O.R.'s counselor testified she had no concerns about O.R. returning home to live with Mother. O.R. told the court she would like to return to Mother but stated she did not want to be alone with Step-Father again.

¶8 Mother testified that a few months before the incident, she noticed O.R. appeared anxious and emotional and began hiding in her room. She also testified that even before the incident, she had begun the process to obtain counseling for O.R. She further testified Step-Father

moved out several days after the incident and recounted that she had obtained weekly counseling for O.R. after learning DCS would only be providing counseling once a month. When pushed, Mother testified that she now believed Step-Father had inappropriately touched O.R. but still believed additional counseling and investigation were necessary to determine what was best for O.R.

**¶9** The juvenile court made detailed findings on the record. The court found Mother was not credible when she testified that she now believed O.R.'s allegations. It found Mother was unwilling or unable to provide proper and effective care and neglected to provide a safe and stable home environment. On this basis, the court found both T.R. and O.R. dependent as to Mother. The court then directed DCS to file a written order.

**¶10** Despite the court's thorough oral findings, the written order it issued later contained only two factual findings to support the dependency, that:

> (1) Mother is unwilling or unable to provide proper and effective parental care and control by neglecting to provide a safe and stable home environment and proper supervision. The mother has neglected to provide a safe home for her children by allowing her husband to remain in the home after being informed that he was sexually abusing the child, [O.R.], in the home. When the child told the mother of the abuse, the mother chose not to believe the child and *is instead maintaining the alleged abuser in the home*. Both children are at risk of abuse in mother's home.

> (2) Mother's home is unfit by reason of abuse or failure to protect from abuse. The child, [O.R.], was sexually abuse[d] in the home by mother's husband. When the child told mother of the abuse, the mother chose not to believe the child and *is instead maintaining the alleged abuser in the home*. Both children are at risk of abuse in mother's home.

(Emphasis added). These two paragraphs were primarily taken from DCS's dependency petition.

4

¶11 We have jurisdiction over Mother's timely appeal pursuant to Article 6, Section 9, of the Arizona Constitution, Arizona Revised Statutes §§ 8–235(A), 12–120.21(A)(1), –2101(A)(1), and Arizona Rules of Procedure for the Juvenile Court 103(A).

## DISCUSSION

¶12 We review an order adjudicating a child dependent for an abuse of discretion. *Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 50, ¶ 13 (App. 2016). We defer to the juvenile court's determination of the weight of the evidence. *Louis C. v. Dep't of Child Safety*, 237 Ariz. 484, 488, ¶ 12 (App. 2015). "We will only disturb a dependency adjudication if no reasonable evidence supports it." *Shella H.*, 239 Ariz. at 50, ¶ 13. To find a child dependent, the court must find that the allegations in the petition are true by a preponderance of the evidence. A.R.S. § 8-844(C)(1). "[T]he juvenile court must consider the circumstances as they exist at the time of the dependency adjudication hearing in determining whether a child is a dependent child." *Shella H.*, 239 Ariz. at 48, ¶ 1.

¶13 The court "must '[s]et forth specific findings of fact in support of a finding of dependency,' which 'shall be in the form of a signed order or contained in a minute entry.'" *Francine C. v. Dep't of Child Safety*, 249 Ariz. 289, 295, ¶ 12 (App. 2020) (quoting Ariz. R. P. Juv. Ct. 55(E)). "Even when the court may have set forth some of its findings and conclusions on the record at the conclusion of the [dependency] hearing, the requirement to state its findings in a written order allows the juvenile court to reflect on the record before memorializing its findings in writing." *Logan B. v Dep't of Child Safety*, 244 Ariz. 532, 538-39, ¶ 19 (App. 2018). These specific written findings allow "the appellate court to determine exactly which issues were decided and whether the [juvenile] court correctly applied the law." *Francine C.*, 249 Ariz. at 296, ¶ 13 (quoting *Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 240, ¶ 24 (App. 2012)). Although the court need not include every fact, the court must include every *ultimate* fact. *Ruben M.*, 230 Ariz. at 241, ¶ 25 (ultimate facts are "those necessary to resolve the disputed issues").

¶14 Here, reasonable evidence does not support the court's written finding that Mother was "maintaining" Step-Father in the family home at the time of the hearing. In fact, each witness confirmed that Step-Father had not lived at the family home since Mother obtained the order of protection against him. Because the evidence does not support this finding, the court abused its discretion in concluding otherwise, and the

5

dependency order must be vacated. *See Shella H.*, 239 Ariz. at 48, 50, ¶¶ 1, 13.

**¶15**     DCS argues that the superior court's oral findings of fact support the basis for the dependency. However, we cannot rely on the court's oral findings as "[d]etailed factual findings made orally on the record do not comply with the safeguards that the legislature, by statute, and our supreme court, by rule, have implemented to protect the due process rights of parents." *Logan B.*, 244 Ariz. at 538, ¶ 16; *see also Francine C.*, 249 Ariz. at 296–98, ¶¶ 16–18, 21; *see also* 89 C.J.S. Trial § 1285 (2020) (stating a court's written findings of fact and conclusions of law prevail over oral pronouncements from the bench). Accordingly, our decision is based only on the court's written dependency order.

**¶16**     Because we vacate and remand the dependency order, the court on remand must allow the parties to present additional evidence to support the current circumstances if the parties so request. *See Shella H.*, 239 Ariz. at 48, ¶ 1 ("[T]he juvenile court must consider the circumstances as they exist at the time of the dependency adjudication hearing . . . .").

## CONCLUSION

**¶17**     We vacate the juvenile court's dependency order and remand for further proceedings consistent with this decision.



AMY M. WOOD • Clerk of the Court
FILED:    AA