NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ANGELA P., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, D.F., *Appellees*.

No. 1 CA-JV 20-0407
FILED 5-11-2021

Appeal from the Superior Court in Maricopa County
No. JD532954
The Honorable Jeffrey R. Rueter, Judge

**AFFIRMED**

COUNSEL

Law Office of H. Clark Jones, LLC, Mesa
By H. Clark Jones
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Eric Devany
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Presiding Judge David B. Gass delivered the decision of the Court, in which Judge Michael J. Brown and Judge David D. Weinzweig joined.

---

**G A S S**, Judge:

¶1        Angela P. appeals the superior court's neglect finding in the dependency case of D.F., her minor child. Because reasonable evidence supports the superior court's finding, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        This court views the evidence in the light most favorable to sustaining the superior court's findings. *Louis C. v. Dep't of Child Safety*, 237 Ariz. 484, 486, ¶ 2 (App. 2015).

¶3        The Pima County superior court previously found D.F. dependent as to mother because of neglect. The Department of Child Safety (DCS) suspected mother used excessive physical discipline and abused methamphetamines. Mother was later incarcerated in federal prison for marijuana smuggling. After her release, mother completed reunification services, and the dependency was dismissed.

¶4        Seven years later, DCS received a report D.F. was at the hospital for a psychological evaluation. That evening, D.F. had accidentally broken an ashtray in the home. This accident led to an argument between D.F. and mother, which in turn led to D.F. picking up a knife and threatening to hurt himself. Though D.F. put down the knife, mother's significant other—who had been living with mother and D.F. for several months—grabbed D.F. by the neck and strangled him until he had trouble breathing. D.F. recounted multiple times in which mother's significant other would wrestle D.F. to the ground or push D.F. against a wall with D.F.'s arm twisted behind his back. Mother was present for those altercations but did not intervene to stop them.

¶5        After a four-day stay in the hospital, D.F. was admitted to an in-patient behavioral-health hospital for suicidal thoughts. D.F. had a history of suicidal thoughts and self-harm before the strangling incident. Mother knew about this history but did not help D.F. before the altercation. Behavioral-health staff explained to mother the treatment D.F. needed, but

mother refused and said she would not take off work to "drive [D.F.] all over to deal with his issues." Mother refused to allow D.F. back into the house, going as far as obtaining an order of protection against D.F. Mother and her significant other both refused family counseling and in-home services to address D.F.'s mental health problems.

¶6 DCS took D.F. into its care, placing him in several group homes. DCS then placed D.F. in his father's care, but D.F. ran away after several weeks. When D.F. returned to DCS's care, he was admitted again to a behavioral-health hospital, and eventually DCS placed D.F. back in a group home. Mother still refused DCS's reunification services.

¶7 After a dependency hearing, the superior court found D.F. dependent as to mother because she was "unable to parent due to neglect." The superior court found mother did not seek out mental-health services until the knife incident. It also found mother refused to allow D.F. back into the home, obtained the order of protection against D.F., and was unwilling to provide for D.F.'s basic needs. Lastly the superior court noted mother's significant other engaged in repeated physical abuse—abuse mother failed to prevent—and how D.F. did not feel safe around him.

¶8 Mother timely appealed. This court has jurisdiction under article VI, section 9, of the Arizona Constitution, and A.R.S. §§ 8-235.A, 12-120.21.A.1, and 12-2101.A.1.

## ANALYSIS

¶9 Mother does not challenge the superior court's dependency finding. She only challenges the neglect finding, arguing "the dependency should only be based on D.F.'s behaviors."

¶10 This court reviews a dependency finding for abuse of discretion. *Louis C.*, 237 Ariz. at 488, ¶ 12. Accordingly, this court will affirm a dependency adjudication "unless no reasonable evidence supports it." *Oscar F. v. Dep't of Child Safety*, 235 Ariz. 266, 267, ¶ 6 (App. 2014) (citation omitted). The superior court is in the best position to weigh the evidence, and "we will not reweigh that evidence on review." *Louis C.*, 237 Ariz. at 488, ¶ 14.

¶11 A dependent child is one whose "home is unfit by reason of abuse, neglect, cruelty or depravity by a parent, a guardian or any other person having custody or care of the child." A.R.S. § 8-201(15)(a)(iii). Neglect is the "inability or unwillingness of a parent . . . to provide that child with supervision, food, clothing, shelter or medical care if that

inability or unwillingness causes unreasonable risk of harm to the child's health or welfare." A.R.S. § 8-201(25)(a).

¶12        Here, reasonable evidence supports the superior court's neglect finding. The superior court received DCS's reports showing mother never sought mental-health care for D.F. before the knife incident, despite knowing D.F. had suicidal thoughts. The reports also revealed D.F.'s accounts of repeated physical abuse. And testimony showed mother never protected D.F. from the abuse her significant other inflicted on him. Even after his stay in the behavioral-health hospital, mother refused to let D.F. back into the house and instead sought an order of protection against him. The behavioral-health reports also noted how D.F. did not feel safe with mother's significant other. In sum, reasonable evidence supports the superior court's neglect finding. *See Oscar F.*, 235 Ariz. at 267, ¶ 6.

¶13        Mother argues A.R.S. § 8-201.01.B precludes a neglect finding. That statute provides:

> A parent may not be considered as having abused, neglected or abandoned or charged with abuse, neglect or abandonment of a biological, foster or adoptive child *solely* for seeking inpatient treatment or an out-of-home placement if the child's behavioral health needs pose a risk to the safety and welfare of the family.

A.R.S. § 8-201.01.B (emphasis added).

¶14        Mother's argument fails, however, because the superior court's neglect finding did not hinge solely on the incident in which she called emergency services in response to D.F. wielding a knife and threatening self-harm. Indeed, the superior court noted her long-time failure to seek out behavioral or mental-health services, her refusal to allow D.F. back into the home, the order of protection, and her inaction when her significant other would abuse D.F. physically. The superior court, therefore, did not base its neglect finding solely on mother seeking treatment for D.F.'s behavioral-health issues. A.R.S. § 8-201.01.B does not apply.

**CONCLUSION**

¶15 We affirm the superior court's neglect finding.



AMY M. WOOD • Clerk of the Court
FILED: AA