NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT
PRECEDENTIAL AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

TARINA S., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, K.D., E.W., *Appellees.*

No. 1 CA-JV 20-0290
FILED 6-24-2021

---

Appeal from the Superior Court in Maricopa County
No.  JD39493
The Honorable Lori Horn Bustamante, Judge

**AFFIRMED**

---

COUNSEL

Law Office of H. Clark Jones, LLC, Mesa
By H. Clark Jones
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Autumn Spritzer
*Counsel for Appellee, Department of Child Safety*

**MEMORANDUM DECISION**

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Samuel A. Thumma joined.

**F U R U Y A**, Judge:

¶1        Tarina S. ("Mother") appeals the superior court's order adjudicating her two children dependent. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2        In May 2020, the Department of Child Safety ("DCS") investigated a report that Mother was using illegal substances and failing to protect E.W., then eight years old, from her older siblings. A DCS investigator received credible reports that Mother had heated arguments with her significant other and had not protected E.W. from physical abuse. E.W.'s father and Mother's former boyfriends reported that Mother had displayed erratic and aggressive behaviors. When asked about substance abuse, Mother told DCS she was using only marijuana.

¶3        Over the next month, Mother and the DCS investigator had several interactions; at times Mother was "calm and collect[ed]," but "other times she would become aggressive and start yelling for seemingly no reason." The investigator reported that Mother would "scream[] about irrelevant subjects and ask[] the same questions repeatedly." Additionally, Mother would "go[] back and forth about whether or not she want[ed] her children to live in her home." Accordingly, DCS filed a dependency petition alleging that Mother was unwilling or unable to provide the children with proper and effective parental care and control. The children were placed in a kinship placement.

¶4        DCS referred Mother for substance abuse testing and treatment and visitation.[1] The DCS case supervisor noted that Mother often appeared confused, erratic, and volatile. In July 2020, Mother completed a substance abuse assessment, and providers recommended a psychiatric

---

[1]        After Mother complied with substance abuse testing, the DCS specialist testified that substance abuse was not a concern.

evaluation. In late August 2020, Mother went to the emergency room for what she termed as "stress issues." Mother was diagnosed as having an adjustment disorder and anxiety and was prescribed medication.

¶5 In early September 2020, the superior court held a contested adjudication. In a written ruling, the court found the children dependent as to Mother. Mother timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") § 8-235(A).

## DISCUSSION

¶6 We review the superior court's dependency determination for an abuse of discretion and will affirm unless no reasonable evidence supports the court's findings. *Louis C. v. DCS*, 237 Ariz. 484, 488, ¶ 12 (App. 2015). The court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004). The court must find a child dependent by a preponderance of the evidence. *Louis C.*, 237 Ariz. at 490, ¶ 23. A dependent child is one who is adjudicated to be "in need of proper and effective parental care and control and who has no parent . . . willing to exercise or capable of exercising such care and control." A.R.S. § 8-201(15)(a)(i). The court "must consider the circumstances as they exist at the time of the dependency adjudication hearing in determining whether a child is a dependent child." *Shella H. v. DCS*, 239 Ariz. 47, 48, ¶ 1 (App. 2016).

¶7 Mother argues that no reasonable evidence supports the superior court's finding that she was unable or unwilling to parent the children at the time of the dependency hearing.

¶8 The court found that Mother was unable to parent the children because of her "erratic and aggressive behaviors," and the record supports this finding. Between May and June 2020, the DCS investigator reported that Mother's demeanor and behaviors rapidly vacillated between being calm and respectful and angry and aggressive. The investigator testified, "Sometimes [Mother] would call and ask questions that had been answered in conversations the day before, or she would call and yell and ask questions but she wouldn't stop speaking and let me try to answer her question." The investigator continued, "[A]t other times [Mother] would call and I could speak with her and she'd be very calm and collected." The investigator testified that Mother's behaviors were "[u]npredictable and erratic" both in person and over the telephone.

¶9        Mother's rapidly changing moods apparently affected her willingness to care for the children. At a meeting with DCS in June 2020, Mother stated she was overwhelmed and asked the investigator to send the children to live with their fathers. But when the investigator returned a few minutes later with a voluntary custody notice, Mother "was screaming and irate and told [the investigator] that she had called the police and . . . to get out of her house." Mother disputed these facts at the dependency hearing, and on appeal, she argues that she was never truly unwilling to parent the children. The court considered Mother's testimony but ultimately found that her pattern of making contradictory statements about her intentions was "likely to lead to misunderstandings about who is responsible for the children at any given time, and that such misunderstandings place the children at risk of further neglect."

¶10        The record supports that Mother's unpredictable aggressive acts rendered her unable to properly supervise the children and placed them at a risk of harm. Trial evidence included testimony that Mother chased her boyfriend down the street and did not stop E.W. from chasing after them. On another occasion, Mother "was arguing with her boyfriend in her bedroom [until K.D.] kicked through the door" to intervene. The DCS investigator testified to reports that the children did not feel safe because of Mother's "yelling and arguing." These facts support the court's finding that "Mother engages in arguments with her significant other during which she fails to properly supervise the children or protect them from potential harm."

¶11        Mother argues that her "aggression and anxiety were [only] due to stress caused by interactions with" DCS. However, the court found that Mother's aggressive and erratic behaviors occurred on occasions even before DCS' involvement. Indeed, E.W.'s father confirmed that Mother has been aggressive and erratic in the past and at one point had stabbed him in the leg.

¶12        Based on all the evidence, the court found that "Mother experiences periods of confusion and lack of self-control that render her unable to properly supervise the children" and inferred that "Mother's behavior is related to mental illness." Mother's psychiatric evaluation and the DCS case supervisor's testimony support this finding. The evaluating psychiatrist diagnosed Mother with an adjustment disorder and anxiety and prescribed her medication. The case supervisor further testified that after Mother began taking the medication, she was able to have a "positive conversation" with her a few days before the dependency hearing. Mother told the case supervisor that before she began the medication, she had been

unable to "see how overwhelmed she actually was." She also told the case supervisor that she was glad DCS was involved because "she was able to see that she needed time for herself to gather herself to be able to be a better parent."

¶13 Although Mother showed some progress just before the trial, the court found that her "condition still poses a significant risk to the children." Mother had begun medication only a few weeks before trial. Additionally, she testified that even though the medication benefitted her, she did not intend to continue taking it. The case supervisor testified that Mother's ambivalence about taking the medication was problematic because DCS needed to see some "ongoing stability" that would allow Mother to demonstrate insight and engage in mental-health treatment. On this record, reasonable evidence supports the court's findings.

**CONCLUSION**

¶14 For the foregoing reasons, we affirm the order adjudicating the children dependent.

