NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SABRINA G., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, A.W., *Appellees.*

No. 1 CA-JV 21-0189
FILED 11-23-2021

Appeal from the Superior Court in Maricopa County
No. JD40122
The Honorable Julie Ann Mata, Judge

**AFFIRMED**

COUNSEL

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Michael J. Brown joined.

---

**F U R U Y A**, Judge:

¶1        Sabrina G. ("Mother") appeals the superior court's order adjudicating her child dependent. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Mother and Reinaldo W. ("Father")[1] are the parents of their minor child, A.W. Mother and Father ended their romantic relationship during Mother's pregnancy, but Mother and Father arranged unsupervised parenting time for Father to care for A.W. after his birth. On two such occasions, Mother expressed concern after A.W. returned with facial bruising from visiting Father. Father told Mother the marks were caused by his dog. Mother photographed the injuries and continued to allow Father to care for A.W. Mother began noticing A.W. display unusual behavior such as leg twitching. Following an overnight visit with Father, where he described the child as fussy and unwilling to sleep, A.W. began wheezing, vomiting, eating less, and napping poorly. Mother called Father to tell him A.W. was acting unusual.

¶3        The next morning, A.W. "seemed to be in a daze, tired, and sick." A.W.'s aunt came that afternoon to take him so Mother could work, and within an hour urged Mother to take him to the hospital. Upon arriving at the hospital, A.W. experienced seizures and respiratory failure. A CT scan revealed brain swelling and bleeding from both a prior and recent trauma. A.W.'s injuries required neurosurgical intervention, and further delay could have led to death. The injuries also caused lasting medical issues, including epileptic seizures and developmental delay.

¶4        A.W.'s treating physicians opined that his injuries raised significant concerns of abusive head trauma. The Department of Child Safety ("DCS") took A.W. into temporary custody. DCS filed a petition to find A.W. dependent as to Mother and Father for neglect and "abuse or

---

[1]        Father is not a party to this appeal.

failure to protect from abuse." The superior court held a contested dependency hearing. The court heard testimony from the detective handling a criminal investigation of the case and DCS's ongoing case worker. The caseworker testified Mother was fully engaged in, and on track to, complete parent aide services—at which point DCS could refer her to a family reunification team. However, the caseworker also testified A.W. would remain at risk of abuse or neglect without DCS oversight until Mother could complete her services.

¶5        The court found DCS had proven the allegations of abuse by a preponderance of the evidence and adjudicated A.W. dependent as to Mother and Father. Mother timely appealed and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") § 8-235(A).

## DISCUSSION

¶6        A child may be adjudicated dependent "whose home is unfit by reason of abuse, neglect, cruelty or depravity by a parent, a guardian or any other person having custody or care of the child." A.R.S. § 8-201(15)(a)(iii). The court must find a child dependent by a preponderance of the evidence. *Louis C. v. DCS*, 237 Ariz. 484, 490, ¶ 23 (App. 2015). We review a court's dependency determination for an abuse of discretion, and we will affirm unless no reasonable evidence supports the court's findings. *Joelle M. v. DCS*, 245 Ariz. 525, 527, ¶ 9 (App. 2018). We view the evidence in the light most favorable to sustaining the court's findings. *Louis C.*, 237 Ariz. at 486, ¶ 2. We review the sufficiency of a court's findings of fact de novo as a mixed question of fact and law. *Francine C. v. DCS*, 249 Ariz. 289, 296, ¶ 14 (App. 2020).

¶7        Mother does not contest the court's finding that Father abused A.W. Rather, Mother contends the court's dependency determination was clearly erroneous because its findings are unsupported by reasonable evidence and only addressed circumstances that existed prior to the time of the adjudication hearing. While the court must make its dependency determination based on the circumstances existing at the time of the hearing, the court may consider prior events that create a substantiated and unresolved threat to a child. *Shella H. v. DCS*, 239 Ariz. 47, 50–51, ¶¶ 12, 16 (App. 2016). For example, a child may be found dependent where their parent has previously demonstrated an inability to protect the child from the abuse of another parent. *Id.* at 50, ¶ 14. This prior inability to protect a child may also be reasonable evidence of a parent's continuing inability to care for the child when: "(1) the prior conditions were sufficient to declare the child dependent; (2) the threat giving rise to those conditions remains

unresolved; and (3) the threat continues to pose an imminent risk of harm to the child." *Francine C.*, 249 Ariz. at 299, ¶ 28.

¶8 In adjudicating A.W. dependent as to Mother, the court found Mother had "fail[ed] to protect the child from physical abuse," and this finding is supported by the record. *See* A.R.S. § 8-201(2) (defining abuse to include, in relevant part, "infliction or allowing of physical injury, impairment of bodily function or disfigurement").

¶9 Specifically, the court noted Mother took photos of A.W.'s facial bruising "on two separate occasions after the child had a visit with Father," "continued to allow visitation that ultimately resulted in" two brain hemorrhages that required surgery, and only took A.W. to the hospital after A.W.'s aunt had noticed his condition within an hour of caring for him. The court also found that "continuation in the home would be contrary to the welfare of the child," and trial testimony supports this finding. The ongoing DCS caseworker testified A.W. would remain at risk of abuse or neglect until Mother successfully completed her parent-aide referral. And upon completion of the parent-aide referral, DCS planned for Mother to receive training in specialized care for A.W.'s lasting medical conditions. Construing the facts in the light most favorable to sustaining the court's dependency determination, reasonable evidence supports the court's finding of dependency, and Mother has not shown an abuse of discretion. *See Louis C.*, 237 Ariz. at 486, ¶ 2.

¶10 Mother also argues that the court made insufficient findings of fact and conclusions of law in its dependency determination and ignored her engagement in parent-aide services. Our legislature and supreme court have established clear findings a superior court must make in determining the dependency of a child to protect the fundamental rights of parents in juvenile dependency proceedings. *See* A.R.S. § 8-844(C)(1)(a)(ii); Ariz. R.P. Juv. Ct. 55(E). "The primary purpose for requiring a court to make express findings of fact and conclusions of law is to allow the appellate court to determine exactly which issues were decided and whether the lower court correctly applied the law." *Ruben M. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 236, 239, ¶ 17 (App. 2012).

¶11 While the court must include the essential and determinative facts upon which its conclusion was reached, the court need not detail every fact that supports its ruling. *Francine C.*, 249 Ariz. at 296, ¶ 14. We may also infer that the court "made whatever additional findings are necessary to sustain its judgment" so long as such findings "are reasonably supported

by the evidence and do not conflict with any of the court's express findings." *Id.* at 297, ¶ 19.

**¶12**        Here, the court's findings are sufficient to allow appellate review, *see supra* ¶¶ 2–5, 9. While the court did not make express findings regarding Mother's active engagement in services, the record reflects such evidence was before the court. Accordingly, we may infer the court found—despite Mother's engagement—that the conditions leading to A.W.'s abuse remained unresolved and posed a continued and imminent risk to A.W. *See Francine C.*, 249 Ariz. at 297, ¶ 19.

## CONCLUSION

**¶13**        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA

5