NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

YVONNE W., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, L.H., *Appellees*.

No. 1 CA-JV 19-0224
FILED 3-31-2020

Appeal from the Superior Court in Maricopa County
No. JD36797
The Honorable M. Scott McCoy, Judge

**AFFIRMED**

COUNSEL

Denise L. Carroll Esq, Scottsdale
By Denise Lynn Carroll
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Sandra L. Nahigian
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Judge Jennifer M. Perkins and Presiding Judge David D. Weinzweig joined.

---

**M O R S E**, Judge:

¶1　　　　Yvonne W. ("Mother") appeals the superior court's order adjudicating her daughter, L.H., a dependent child. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2　　　　Mother is the natural parent of L.H., born in February 2003. Mother struggles with alcohol abuse, mental health issues, and domestic violence. In May 2018, police and DCS investigated after a fight between Mother and L.H. At that time, Mother denied any substance abuse or mental health issues, and DCS provided the family with in-home services. The family successfully completed services in November 2018. One month later, while Mother was intoxicated, she attacked L.H. When Mother's boyfriend ("Boyfriend") attempted to intervene, Mother bit Boyfriend and threatened to kill him. Mother then reported suicidal thoughts to a crisis hotline before police escorted her to a mental-health facility, where she remained for a few days. DCS took custody of L.H. and filed a dependency petition.

¶3　　　　After Mother's release, DCS met with Mother, Boyfriend, and L.H. Mother admitted she struggled with alcoholism and, to a lesser degree, suffered from mental health problems. L.H. feared Mother and felt unsafe when living with her. Mother initially stated she did not want to engage in services or visits and wished to have her rights terminated, but later changed her mind. DCS offered Mother services, including substance-abuse testing and treatment, a psychological evaluation, individual counseling with a domestic-violence component, and a parent-aide with visitation.

¶4　　　　In March 2019, Mother completed a psychological evaluation with Dr. Stephanie Leonard. Dr. Leonard diagnosed Mother with post-traumatic stress, persistent-depressive, and alcohol-use disorders and found that a child in Mother's care would be at risk for neglect and abuse.

Dr. Leonard concluded that Mother's ability to parent L.H. in the future depended directly on her sobriety and engagement and success in services, particularly mental-health treatment. She recommended a psychiatric evaluation, individual therapy with a master's level therapist, family therapy, and domestic-violence therapy.

¶5 By the time of the dependency hearing, DCS was still setting up a provider for a psychiatric evaluation. Mother participated inconsistently in substance-abuse testing, missed some tests and submitted five diluted tests between February 19 and May 13. Mother completed a behavioral-health assessment in March 2019, which confirmed her alcohol-use disorder. Mother's substance-abuse treatment provider recommended that she engage in its intensive outpatient program, but Mother engaged inconsistently due to her work schedule. By the time of the dependency hearing, Mother's inconsistent attendance had prevented her from even beginning individual counseling through the outpatient program. Mother consistently attended the parent-aide service, though L.H. refused to attend all but one visit with her. Because of L.H.'s refusal, DCS did not refer Mother and L.H. for family therapy.

¶6 The superior court held a dependency hearing in May 2019. Mother did not contest the "need for [a] dependency," services, or L.H.'s case plan of independent living; she only challenged DCS's allegations that she had abused or neglected L.H. The court later found L.H. dependent on all grounds alleged. Mother timely appeals from this decision and we have jurisdiction pursuant to the Arizona Constitution Article 6, Section 9 and A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

## DISCUSSION

¶7 On appeal, Mother argues that the superior court erred in holding a contested dependency hearing because she agreed to the dependency based on L.H.'s unwillingness to return home. Alternatively, Mother contends that DCS presented no evidence "that showed [L.H.] was not being properly parented or that Mother's problems affected her ability to parent."

¶8 We review the superior court's decisions for an abuse of discretion and will affirm unless no reasonable evidence supports the court's findings. *Louis C. v. Dep't of Child Safety*, 237 Ariz. 484, 488, ¶ 12 (App. 2015); *Bob H. v. Ariz. Dep't of Econ. Sec.*, 225 Ariz. 279, 281, ¶ 9 (App. 2010). The superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of the witnesses, and resolve

disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004). The superior court must find a child dependent by a preponderance of the evidence and "must consider the circumstances as they exist at the time of the dependency adjudication hearing in determining whether a child is a dependent child." *Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 48, ¶ 1 (App. 2016); *Louis C.*, 237 Ariz. at 490, ¶ 23.

¶9 A dependent child is one who is adjudicated to be "in need of proper and effective parental care and control and who has no parent . . . willing to exercise or capable of exercising such care and control" or one "whose home is unfit by reason of abuse [or] neglect . . . ." A.R.S. § 8-201(15)(a)(i), (a)(iii). Neglect means "[t]he inability or unwillingness of a parent . . . to provide [her] child with supervision, food, clothing, shelter or medical care if that inability or unwillingness causes unreasonable risk of harm to the child's health or welfare." A.R.S. § 8-201(25)(a).

## I. The Superior Court Did Not Err By Holding A Contested Dependency Hearing.

¶10 DCS alleged in its dependency petition that:

1. Mother is unwilling or unable to provide proper and effective parental care and control by neglecting [L.H.] due to substance abuse. . . .

2. Mother is unwilling or unable to provide proper and effective parental care and control by neglecting to properly treat her mental health. . . .

3. Mother is neglecting to provide proper and effective parental care and control due to domestic violence. . . .

4. Mother's home is unfit by reason of abuse. . . .

5. Mother is unwilling or unable to provide proper and effective parental care and control by neglecting to provide for [L.H.]'s basic needs due to unwillingness to parent. . . .

¶11 Mother asserts that she was willing to stipulate to a dependency based on L.H.'s unwillingness to come home. For professional reasons, however, Mother was unwilling to stipulate to any grounds involving abuse or neglect. Because all five of DCS's dependency allegations "revolve[d] around Mother's alleged neglectful and abusive

4

behavior," DCS refused to stipulate to a dependency that did not reflect the allegations and decided to proceed to trial.

¶12          Mother maintains that DCS's decision was merely punitive and ought to be reversed. Mother cites no authority for her claim that the court "should have accepted her submission to the dependency without pushing the matter to trial" on DCS's abuse and neglect allegations. Instead, the State alleges the grounds for the dependency. *See* A.R.S. §§ 8-533(A), -534(A)(7). Mother can then deny the alleged grounds and may challenge the evidence for those grounds at the dependency adjudication. *See* A.R.S. §§ 8-843, -844. She does not, however, have the right to pick and choose the grounds upon which she stipulates to a dependency. The court proceeded properly here, and we find no abuse of discretion. *See Bob H.*, 225 Ariz. at 281, ¶ 9.

## II.     Reasonable Evidence Supports The Order Adjudicating L.H. Dependent Based On Mother's Substance Abuse.

¶13          Mother next argues that insufficient evidence supported the dependency petition because DCS "failed to show a convincing connection between Mother's issues and her ability to parent the child[] . . . on a day to day basis." We affirm because reasonable evidence supports the court's findings that "Mother is unwilling or unable to provide proper and effective parental care and control by neglecting [L.H.] due to substance abuse." Mother has a long-standing history of abusing alcohol and admitted to the case manager that "she had always used alcohol as a crutch throughout her life." L.H. confirmed that Mother "drank very often." Indeed, Mother's providers diagnosed her with an alcohol-use disorder, and recommended its intensive outpatient program. Dr. Leonard noted that Mother had limited insight into her alcohol abuse, and at the time of the dependency hearing, Mother had not fully addressed this issue. She continued drinking alcohol after L.H.'s removal, reporting a sobriety date of April 5, 2019, and submitted several diluted tests, some as late as May 2019—after her reported sobriety date and only a few weeks before the dependency hearing.

¶14          Reasonable evidence supports a finding that Mother's alcohol use renders her unable to safely supervise L.H. and places L.H. at an unreasonable risk of harm. Dr. Leonard testified generally that "[i]ndividuals who use substances might be less inhibited so they act out aggressively," creating "unsafe situations" for their children. Mother demonstrated this as L.H. and other family members reported that Mother becomes aggressive after drinking. For example, in December 2018, Mother

fought with L.H. after consuming over ten beers.  L.H. reported that Mother hit her, pulled her hair, and pushed her thumbs inside L.H.'s eyes.  As a result, L.H. had scratches on her hands, arms, and one eye.  Because she was intoxicated, Mother did not even remember harming L.H.

**¶15**        Reasonable evidence supports the court's finding that a dependency exists under both A.R.S. § 8-201(15)(a)(i) and (a)(iii).  Because we affirm the court's dependency order based on Mother's substance abuse, we need not consider DCS's allegations of domestic violence, mental health, and abuse.  *See Jesus M. v. Dep't of Child Safety*, 203 Ariz. 278, 280, ¶¶ 3-4 (App. 2002) (stating that a court may affirm if reasonable evidence supports at least one termination ground).

## CONCLUSION

**¶16**        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:  AA