NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MARK O., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.O., *Appellees*.

No. 1 CA-JV 19-0417
FILED 8-25-2020

Appeal from the Superior Court in Maricopa County
No.  JD33436
The Honorable Lori Ash, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Robert D. Rosanelli, Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Doriane F. Neaverth
*Counsel for Appellee*

**MEMORANDUM DECISION**

Chief Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Samuel A. Thumma and Judge Randall M. Howe joined.

**S W A N N**, Chief Judge:

¶1        Mark O. ("Father") appeals the superior court's order finding his son, A.O., dependent.  He argues the evidence was insufficient to establish that A.O. was dependent on the grounds of abuse and neglect.  We affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2        Father is the adoptive parent of C.O., born in December 1999, and A.O., born in June 2002.  In June 2019, A.O. left early in the morning to attend a basketball tournament.  When he returned, he discovered that Father had locked him out of the house and refused to let him back inside.

¶3        Father called the police, and once officers arrived, Father stated that A.O. "was out of control" and wanted police to take him away from the home.  Father explained that he and A.O. had gotten into a verbal altercation two days earlier but failed to provide police with concrete details about the fight.  Once the officer indicated that he was unable to remove A.O. from the property without allegations of a crime, Father began to allege that A.O. threatened to kill him during the argument and that he was now fearful for his life.

¶4        A.O., who had been at the basketball tournament all day, denied threatening Father and told officers that Father had been attempting to remove him from the house for some time.  The officer later testified that although he did not believe Father's accusations, he still called the Department of Child Safety ("DCS") to take custody of A.O.

¶5        DCS then filed a dependency petition as to A.O.,[1] alleging abuse and neglect.  The court held a contested dependency adjudication hearing, in which Father, the police officer, A.O., and C.O. testified.  Both

---

[1]        Although C.O. was also adjudicated dependent, the superior court dismissed the dependency when he turned 18.  C.O. is not subject to this appeal.

C.O. and A.O. testified that Father had previously physically abused them. C.O. recounted that in 2016, Father choked A.O. When C.O. called the police, Father requested that C.O. be taken to the hospital for a psychiatric evaluation. After Father refused to pick C.O. up from the hospital, DCS became involved and C.O. was removed from the home. C.O. also testified that Father regularly punched and choked him.

¶6　　　　A.O. testified that Father had previously choked, shoved, and hit him and that he witnessed Father punch C.O. numerous times. He further testified that Father locked the refrigerator while he was living with his ex-wife. Once Father's ex-wife moved out of the house, the lock was temporarily removed, but it was put back onto the refrigerator in May 2019 when communication between A.O. and Father dissipated.

¶7　　　　Father denied the allegations of physical abuse and that the refrigerator remained locked. Despite Father's denials, the superior court found A.O. dependent. The court took judicial notice that DCS had previously taken custody of C.O. in 2016 based on allegations from Father that C.O. "had 'out of control' behaviors, was physically aggressive, and 'may' have had substance abuse issues." The court also noted that Father's concerns about C.O. mimicked Father's concerns about A.O. three years later.

¶8　　　　Father appeals.

## DISCUSSION

¶9　　　　Father contends that the superior court's adjudication of A.O. as dependent was clearly erroneous and contrary to substantial evidence in the record.

¶10　　　　Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004), we review an order adjudicating a child dependent for an abuse of discretion, *Louis C. v. Dep't of Child Safety*, 237 Ariz. 484, 488, ¶ 12 (App. 2015). The superior court is required to find a child dependent by a preponderance of the evidence and "must consider the circumstances as they exist at the time of the dependency adjudication hearing in determining whether a child is a dependent child." *Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 48, ¶ 1 (App. 2016); *Louis C.*, 237 Ariz. at 490, ¶ 23.

¶11　　　　A dependent child is adjudicated to be "[i]n need of proper and effective parental care and control and who has no parent . . . willing

3

to exercise or capable of exercising such care and control" or "whose home is unfit by reason of abuse [or] neglect." A.R.S. § 8-201(15)(a)(i), (iii). Abuse is defined as "the infliction or allowing of physical injury" whereas neglect is defined as "[t]he inability or unwillingness of a parent . . . to provide . . . supervision, food, clothing, shelter or medical care if that inability or unwillingness causes unreasonable risk of harm to the child's health or welfare." A.R.S. § 8-201(2), (25)(a).

¶12        Father argues that his conduct in June 2019 did not rise to the level of child abuse or neglect because he did not use force against the minor, and A.O. received appropriate care once in DCS custody. Father further contends that no evidence showed "physical injury, impairment of bodily function or disfigurement." Specifically, he argues that "[t]here was no testimony of redness, bruising, or pain associated with the alleged physical conduct." But C.O. testified that when Father punched him in the face, it would occasionally leave marks. And a court may rely on circumstantial evidence to infer the infliction of physical injury. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 13 (App. 2002). Here, both A.O. and C.O. testified that Father hit, choked, and punched them on numerous occasions. The superior court found this testimony to be credible, and we will not reweigh the superior court's credibility determinations. *See id.* at ¶ 12.

¶13        Father next contends that he was justified in denying A.O. access to the house after A.O. threatened to kill him. Because Father failed to present this argument to the superior court, he has waived it on appeal. *See Christy C. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 445, 452, ¶ 21 (App. 2007).

¶14        In any event, sufficient evidence proved abuse and neglect outside of the June 2019 incident. Although the superior court must consider the circumstances existing at the time of the dependency hearing, *Shella H.*, 239 Ariz. at 48, ¶ 1, "we will not hesitate to affirm a finding of dependency as to parents who presently deny that they are responsible for past abuse and neglect," *Pima Cty. Juv. Dependency Action No. 96290*, 162 Ariz. 601, 604 (App. 1990). Here, even though Father denied abusing the children and alleged that he only locked A.O. out of the house because he feared for his life, both A.O. and C.O. testified to numerous other instances of physical abuse. Accordingly, the record supports the superior court's conclusion that A.O. was dependent as to Father.

## CONCLUSION

¶15          We affirm the order adjudicating A.O. a dependent child.



AMY M. WOOD • Clerk of the Court
FILED:     AA