NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

ELISA R., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, C.J., *Appellees*.

No. 1 CA-JV 20-0222
FILED 1-14-2021

Appeal from the Superior Court in Maricopa County
No. JD38611
The Honorable Sam J. Myers, Judge

**AFFIRMED**

COUNSEL

Czop Law Firm, PLLC, Higley
By Steven Czop
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Sandra L. Nahigian
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Randall M. Howe joined.

---

**C R U Z**, Judge:

¶1        Elisa R. ("Mother") appeals the superior court's order adjudicating her child, C.J., dependent based on substance abuse and domestic violence.  For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶2        Mother is the biological parent of C.J., born September 2009. Since C.J.'s birth, Mother has a history of reports to the Department of Child Safety ("DCS") involving substance abuse, domestic violence, physical abuse, and mental health concerns.

¶3        In October 2019, DCS received a report that Mother was involved in a domestic violence incident with her boyfriend in C.J.'s presence.  DCS removed C.J. from Mother's custody and filed a dependency petition.  The juvenile court dismissed the dependency in November 2019, and awarded C.J.'s biological father ("Father")[1] custody and temporary sole decision-making authority after Father tested negative for substances and was deemed appropriate to care for C.J.  The court also ordered Mother have supervised parenting time.

¶4        Shortly after, Father left C.J. in the care of maternal grandmother and was later arrested on drug-related charges.  In February 2020, Mother sought custody of C.J. in the family court.  Unaware of the substance abuse history of both parents, the court granted Mother and Father joint custody.  A few days later, DCS received a report expressing concern for C.J. and notifying DCS of the custody orders.  DCS filed another dependency petition in March 2020, alleging C.J. was dependent as to Father due to neglect and substance abuse, and dependent as to Mother due to substance abuse, mental health, and domestic violence.

¶5        Mother was offered mental health services, drug testing, substance abuse counseling, a parent aide, domestic violence counseling, a

---

[1]        Father is not a party to this appeal.

psychological evaluation, and supervised visits. At the dependency hearing, the court heard testimony about Mother's participation with services and her cooperation with DCS. The parent aide testified that Mother had violated rules during her visitations by discussing inappropriate topics with C.J. and becoming combative when the parent aide attempted to redirect the conversation. The aide also testified Mother had made threats of violence towards DCS case managers. However, a DCS case worker testified that recent visits had started to go better, and that Mother had been able to behave appropriately and demonstrate emotional stability.

**¶6** At the hearing, Mother acknowledged she had used methamphetamine in the past, though she was unable to recall the last time she had used and could not remember if she had used this year. Mother testified she had completed an intake for her substance abuse treatment, though she refused the counseling sessions because they were being conducted telephonically. Mother had several clean drug tests leading up to the hearing, but witnesses testified that Mother had missed several tests and had not complied with a court order to submit to a hair follicle test.

**¶7** A DCS case worker testified that Mother refused to participate in a psychological evaluation and had not participated in any domestic violence services through DCS. The DCS caseworker also testified that Mother was not cooperative or forthcoming with DCS, and so DCS was unsure whether Mother was living with the boyfriend who had physically abused her. Finally, a witness testified that Mother had been seeking mental health services since 2017, though she was recommended to participate in counseling sessions weekly and she only participated about once a month.

**¶8** The juvenile court found C.J. dependent as to Mother due to substance abuse and domestic violence. Mother timely appealed. This court has jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).[2]

---

[2] Though neither party argues that the superior court lacked jurisdiction in this matter, in its answering brief, DCS recognized there may be a question as to whether Arizona has jurisdiction over this matter under the Uniform Child Custody Jurisdiction and Enforcement Act because of Mother's involvement with Texas child protective services in 2017. *See* A.R.S. §§ 25-1001 to -1067. The record is unclear about the extent of the

**DISCUSSION**

**¶9** Mother contends the court erred in finding C.J. dependent because there was no substantial evidence to support such a finding.[3] "On review of an adjudication of dependency, we view the evidence in the light most favorable to sustaining the juvenile court's findings." *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235, ¶ 21 (App. 2005). We review a dependency order for a clear abuse of discretion, and we generally will not disturb a dependency adjudication unless it is clearly erroneous and no reasonable evidence supports it. *Louis C. v. Dep't of Child Safety*, 237 Ariz. 484, 488, ¶ 12 (App. 2015).

**¶10** For a child to be found dependent, DCS must prove by a preponderance of the evidence one of the grounds found in A.R.S. § 8-201(15). A.R.S. § 8-844(C). Under A.R.S. § 8-201(15)(a), a dependent child is a child:

> (i) In need of proper and effective parental care and control and who has no parent or guardian, or one who has no parent or guardian willing to exercise or capable of exercising such care and control.
>
> . . . .
>
> (iii) A child whose home is unfit by reason of abuse, neglect, cruelty or depravity by a parent, a guardian or any other person having custody or care of the child.

---

Texas courts' involvement with C.J. and the authority it may have exercised in issuing orders involving C.J. However, given Mother's involvement with DCS in Arizona since 2009 and her ongoing Arizona family court case since 2011, it appears the State of Arizona had initial child custody jurisdiction and thus has exclusive continuing jurisdiction over C.J. *See* A.R.S. §§ 25-1031, -1032.

[3]     Mother also argues the superior court failed to include its specific findings of fact in a written order, as is required under Arizona Rule of Procedure for the Juvenile Court 55(E)(3). However, at DCS' request, this Court previously remanded this matter to the superior court and it subsequently issued a written order that included specific findings of fact in support of the dependency findings. This issue is therefore moot. *See Cardoso v. Soldo*, 230 Ariz. 614, 617, ¶ 5 (App. 2012).

¶11  The juvenile court found C.J. dependent because Mother was unable to provide proper and effective parental care and control due to substance abuse and domestic violence.

I. Substance Abuse

¶12  Mother contends that at the time of the filing of the dependency petition, no evidence showed she had a substance abuse problem hindering her ability to parent C.J. At most, Mother argues, there was a mention of possible drug use months before the dependency filing, and speculative risk of drug abuse is insufficient to support a dependency finding.

¶13  Mother has a history of substance abuse issues, and her failure to be forthcoming and honest in this dependency raises concerns about her ability to overcome her addiction and parent C.J. at this time. Mother has stated she did not believe her drug use has affected her life at all, and she has attempted to minimize her history of drug use. While Mother previously admitted to using methamphetamine daily, during her intake for substance abuse counseling in April 2020 she claimed she had used methamphetamine for "only a little bit over a short period of time."

¶14  When Mother last used methamphetamine or other illicit substances is also unclear. In December 2019, Mother attended counseling as part of her mental health services, and she reported that she last used methamphetamine in October 2019. In March 2020, she reported to DCS that she last used methamphetamine "a few months ago." In her April 2020 intake, Mother was again vague with her timeline and admitted to using methamphetamine a few months prior. At trial, Mother stated she could not remember the last time she had used methamphetamine, and she could not remember if she had used methamphetamine in 2020.

¶15  Mother contends she had tested negative for illicit substances for two months at the time of the dependency trial; however, Mother failed to test six times from March through June 2020. Mother also failed to submit to a court-ordered hair follicle test. In any event, Mother's "temporary abstinence from drugs" does not outweigh her significant history of drug abuse. *See Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 29 (App. 2010). In determining whether a parent would be able to overcome her substance abuse and "be in a position to parent the child in the foreseeable future," the court must also consider "the treatment history of the parent." *Id.* at 378, ¶ 25 (citation omitted). When the parent has been unable to "experience sustained sobriety in a noncustodial setting,

and establish the essential support system to maintain sobriety, there is little hope of success in parenting." *Id.* As the DCS case worker testified at the dependency hearing, two months of negative tests in a custodial setting is insufficient to demonstrate long-term sobriety.

¶16 Additionally, Mother's participation in other substance abuse services at the time of the dependency proceedings had not been consistent. She refused to participate in substance abuse counseling because the group sessions were being held virtually or telephonically. However, she was participating in other therapy sessions and DCS services remotely. Through continued participation in services and consistent testing, Mother can eventually demonstrate long-term sobriety. At this time, however, sufficient evidence supports the superior court's dependency ruling.

II. Domestic Violence

¶17 Mother argues evidence of her involvement in a domestic violence relationship did not support a finding that she could not parent C.J. Mother contends DCS presented no evidence of domestic violence occurring at the time of the filing of the dependency petition, and no evidence supported a finding that a threat of domestic violence was unresolved or posed an imminent risk of harm to C.J. "[C]ontrary to Mother's assertion, domestic violence need not be continuous or actively occurring at the time of the adjudication hearing to support a finding of dependency on these grounds; the substantiated and unresolved threat is sufficient." *Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 51, ¶ 16 (App. 2016). Sufficient evidence showed that the threat of domestic violence remained unresolved.

¶18 Mother has acknowledged she has a history of being involved in violent relationships. In 2013, Mother pled guilty to a domestic violence offense, and was required to complete a counseling program. In 2017, Mother admitted to again being involved in a physically abusive relationship. In 2018, Mother was arrested for a domestic violence offense and, after pleading guilty, was required to complete another diversion program. In October 2019, Mother reportedly suffered bruising around an eye as a result of an assault by her boyfriend, and in December 2019, Mother was hospitalized due to another domestic violence incident. Also, through at least January 2020, Mother was living in a shelter for domestic violence victims.

¶19 Even after her participation in two domestic violence counseling programs, Mother continued to remain in physically abusive

relationships and engage in violence in the presence of C.J. C.J. has witnessed fights between Mother and her boyfriend, and he has even intervened, placing himself between Mother and her boyfriend in an attempt to stop the fighting. C.J. also expressed to DCS caseworkers that he was fearful when witnessing altercations between his Mother and her boyfriend. At the dependency hearing, witnesses testified that Mother would not tell DCS whether she was again living with her boyfriend or maintaining a relationship with him, or was participating in domestic violence counseling services. Given Mother's history of continued involvement in violent relationships and failure to engage in services during this dependency, the court did not err in finding the threat of harm to C.J. was unresolved and imminent.

**¶20** Though Mother argues she has a stable job and residence, and has taken appropriate steps in the family court to obtain parenting time and custody over C.J., this does not mitigate the court's substance abuse and domestic violence concerns. While Mother in recent months had been more cooperative with DCS and was participating in services, the superior court found she had not yet remedied the circumstances that caused C.J. to be found dependent, and we find no error.

**CONCLUSION**

**¶21** For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA

7