NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STEPHANIE S., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, M.K., C.K., *Appellees*.

No. 1 CA-JV 20-0227
FILED 4-22-2021

Appeal from the Superior Court in Maricopa County
No.  JD39289
The Honorable Christopher T. Whitten, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm PLLC, Scottsdale
By Christopher Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Eric Devany
*Counsel for Appellee, Department of Child Safety*

## MEMORANDUM DECISION

Judge Jennifer B. Campbell delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge James B. Morse Jr. joined.

**C A M P B E L L**, Judge:

¶1        Stephanie S. ("Mother") appeals the superior court's order adjudicating her two children dependent. For the following reasons, we affirm.

## BACKGROUND

¶2        Mother and Demetrius K. ("Father") were married in 2007 and are the parents of Mary and Cathy.[1] They divorced in 2017, and Mother began a relationship with Joel H. ("Boyfriend"). Between 2016 and 2020, the Department of Child Safety ("DCS") received several reports that Father, Mother, and Boyfriend were abusing and neglecting the children. DCS was unable to substantiate the claims. In one report, Cathy, then ten years old, was found alone near a busy highway. She told authorities she was tired of being hurt by Mother and Boyfriend and would "rather 'die' th[an] be in the home with them."

¶3        In early 2019, a court-appointed advisor interviewed the parents, the children, and Boyfriend. Father reported that Boyfriend was restricting his communication with Mother, rendering co-parenting impossible. He also told the advisor Mother had pulled a gun on him after they separated. Mother reported that while she and Father were together, they engaged in acts of domestic violence. Both Mary and Cathy told the advisor they did not feel safe in Mother's home. Cathy stated she "would rather be in heaven than" in Mother's home.

¶4        Later that year, the children reported to a DCS caseworker that Boyfriend drinks heavily, screams and gets violent. The children confirmed that Boyfriend had been physically abusive with them both. The girls maintained they were afraid of Boyfriend and did not feel safe in Mother's home. They explained that Mother would not protect them or

---

[1]    Pseudonyms are used for the children to protect their identities.

believe them, but rather called them liars when they told her what Boyfriend was doing to them. Indeed, Cathy said that if she were forced to live in the same house as Boyfriend, she would commit suicide.

**¶5**    Based on the children's disclosures, DCS offered Mother two rounds of family preservation services aimed at helping her improve her ability to communicate, co-parent, and understand her protective role as a mother. She completed the service on her second referral, but DCS had lingering concerns that she lacked the insight necessary to keep the children safe.

**¶6**    This was confirmed in September 2019, when Cathy told Mother that Boyfriend had engaged in grooming behaviors and touched her inappropriately. In response, Mother called Cathy a liar. The case manager then concluded that Mother was unable to protect the children from Boyfriend because she did not recognize his controlling behaviors and did not understand the emotional abuse he was inflicting on the family. The case manager noted that Mother would communicate only through Boyfriend and would always consult Boyfriend before answering a question. Yet Mother continued to describe Boyfriend as supportive, loving, caring, and affectionate and did not understand her daughters' fear of him. The case manager concluded that Mother's failure to recognize Boyfriend's abuse and control affected her ability to properly parent the children. Father then secured custody of the children through family court.

**¶7**    By March 2020, Father was homeless and living with the children in a van. Although Mother knew the location of the children, she waited a month to file for sole custody. Father then concealed the children's whereabouts and eventually absconded with them. The following month DCS located and took custody of the children and filed a dependency petition.

**¶8**    In July 2020, the juvenile court adjudicated the children dependent.[2] Mother timely appealed.

---

[2]    The hearing took place over two days, before two judicial officers. Upon discovering a conflict of interest, the first judge recused himself. DCS argues this court can and should affirm the dependency ruling based solely on evidence received during the second day of the hearing. Therefore, this Court has considered only the record from the second day.

**DISCUSSION**

**¶9** We review the juvenile court's dependency determination for an abuse of discretion and will affirm unless no reasonable evidence supports the court's findings. *Louis C. v. Dep't of Child Safety*, 237 Ariz. 484, 488, ¶ 12 (App. 2015). The juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004). The juvenile court must find a child dependent by a preponderance of the evidence. *Louis C.*, 237 Ariz. at 490, ¶ 23.

**¶10** A dependent child is one who is adjudicated to be "in need of proper and effective parental care and control and . . . has no parent . . . willing to exercise or capable of exercising such care and control" or "[a] child whose home is unfit by reason of . . . neglect . . . by a parent . . . having custody or care of the child." A.R.S. 8-201(15)(a)(i), (iii). Neglect means the "inability or unwillingness of a parent . . . to provide [her children] with supervision . . . if that inability or unwillingness causes unreasonable risk of harm to the [children's] health or welfare." A.R.S. § 8-201(25)(a). "[T]he juvenile court must consider the circumstances as they exist at the time of the dependency adjudication hearing in determining whether a child is a dependent child." *Shella H. v. Dep't of Child Safety*, 239 Ariz. 47, 48, ¶ 1 (App. 2016).

**¶11** Mother argues that no reasonable evidence supports the juvenile court's order adjudicating the children dependent. We disagree.

**¶12** The evidence supports the juvenile court's finding that Mother neglected the children and was unable or unwilling to provide them proper and effective parental care and control. Mother admitted to engaging in domestic violence with Father. Although she denied any physical domestic violence with Boyfriend, ample evidence demonstrated that Boyfriend exerted power and control over her, which is part of the domestic-violence cycle. Evidence also supported the court's determination that Boyfriend's power and control hampered Mother's ability to safely parent the children.

**¶13** DCS case managers and the parents' court-appointed advocate all recognized Boyfriend's controlling behaviors and the impact they had on Mother's ability to parent and protect the children. Mother's first case manager explained that she could only contact Mother through Boyfriend. The family court ordered Mother to get her own cell phone, but the case manager still had to make contact through Boyfriend. Mother also

4

deferred to Boyfriend before responding to the case manager's questions. Mother's second case manager observed similar behaviors. Likewise, the court-appointed advocate reported she was "unable to determine if Mother is able to make decisions independently for herself and the children," explaining that "it was difficult to decipher Mother['s] thoughts and feelings" as "[e]very time [the advocate] spoke with Mother on the phone [Boyfriend] was on the phone as well and often spoke for her."

¶14        Both girls agreed that Boyfriend controls Mother and further asserted that he is physically violent with them. They were afraid of Boyfriend and described a time when he chased Cathy out of the home, pushed her down, and set his foot on her back. According to the children, Mother was present on that occasion and encouraged Boyfriend's behavior. Additionally, Mary recounted a time that Boyfriend locked her in her room and though she yelled for Mother to help, Mother did nothing. Finally, Cathy claimed that Boyfriend touched her inappropriately. Based on this evidence, the court correctly determined that Mother was unable or unwilling to recognize this cycle of power and control and the unreasonable risk of harm it posed to the children in her care.

¶15        Mother testified that the children never told her anything negative about Boyfriend, and the case manager testified that Mother believed their statements to DCS were the result of brainwashing by Father. In contrast, both girls said they raised these issues with Mother, but she called them "liars." The case manager testified that even if Mother did not believe the children, she needed to be protective, supportive, and aligned with them so she could decipher why there were afraid of Boyfriend. As the second case manager testified, Mother's denial of the events prevents her from "step[ping] in and protect[ing] her children from" Boyfriend.

¶16        On appeal, Mother continues to argue that Father "brainwashed" and "manipulat[ed]" the children against Boyfriend. However, the juvenile court considered Mother's testimony, and this court will not reweigh the evidence on appeal. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12 (App. 2002). Mother also argues that, on her own initiative, she secured counseling for the children. Although Mother took a positive step by finding counseling for the girls, the evidence showed that she still does not fully understand or accept her responsibility to protect her daughters from abuse. Reasonable evidence supports the juvenile court's order adjudicating the children dependent as to Mother.

## CONCLUSION

¶17      For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:   AA