NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO S.W.

No. 1 CA-JV 24-0016
FILED 05-28-2024

Appeal from the Superior Court in Maricopa County
No. JD38500
The Honorable Todd F. Lang, Judge

**AFFIRMED**

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Ken Sanders
*Counsel for Appellee DCS*

Sarah J. Michael, Esq., Phoenix
*Counsel for Appellee Child*

---

## MEMORANDUM DECISION

Presiding Judge Anni Hill Foster delivered the decision of the Court, in which Judge Brian Y. Furuya and Vice Chief Judge Randall M. Howe joined.

---

**F O S T E R**, Judge:

¶1        T.D. ("Father") appeals the superior court's termination of his parental rights to S.W. on abandonment grounds. For the following reasons, the order is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶2        Father is the biological father of S.W., who was born in September 2019. In January 2022, Father was arrested and charged with multiple counts of arson. He remained imprisoned during the following dependency and termination proceedings.  At the time Father was arrested, S.W. and her half-brother were living with her mother. But only two weeks later, the Department of Child Safety ("Department") took custody of S.W. because of suspected abuse and neglect.

¶3        In its dependency petition, the Department alleged S.W. was dependent as to Father because of abuse or neglect, claiming that "[Father] has failed to seek custody or parenting time with [S.W.]," "[S.W.] did not indicate any contact with her father," and Father's whereabouts were unknown. A few months later, the Department submitted a Declaration of Diligent Search and Unknown Residence claiming it could not locate Father. So, Father was served by publication, and the proceeding went forward in his absence. In May, the court found S.W. dependent as to Father and affirmed the case plan of reunification. A few months later, S.W.'s grandmother was appointed to care for S.W. and her half-brother.

¶4        Almost a year later, in May 2023, the case plan changed to severance and adoption, following a motion from the Department.  Soon thereafter, the Department moved to terminate Father's parental rights. Father was personally served with the termination petition while incarcerated in July 2023. Following a one-day termination hearing in November, Father's parental rights were terminated in a January 2024 order.

**¶5** Father timely appealed. This Court has jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

**¶6** This Court upholds termination orders unless the superior court abused its discretion or made clearly erroneous factual findings, but statutory interpretation is reviewed *de novo. Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004); *Louis C. v. Dep't of Child Safety*, 237 Ariz. 484, 488, ¶ 12 (App. 2015). Terminating parental rights requires the court to find at least one ground for termination listed in A.R.S. § 8-533(B) by clear and convincing evidence and that the termination would be in the child's best interests. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 149–50, ¶ 8 (2018).

## I. The Superior Court Did Not Err in Finding Abandonment as a Ground to Terminate Father's Parental Rights.

**¶7** Father first argues that the court abused its discretion by ignoring his "just cause" for failing to maintain a parent-child relationship with S.W. and finding abandonment as a ground to terminate his rights. Abandonment is one of several reasons a court may terminate a parent-child relationship. A.R.S. § 8-533(B)(1). "'Abandonment' means the failure of a parent to provide reasonable support and to maintain regular contact with the child, including providing supervision" and "includes a judicial finding that a parent has made only minimal efforts to support and communicate with the child." A.R.S. § 8-531(1). "Failure to maintain a normal parental relationship with the child without just cause for a period of six months constitutes prima facie evidence of abandonment." *Id.*

**¶8** *Prima facie* evidence is "[e]vidence that will establish a fact or sustain a judgment unless contradictory evidence is produced." *Evidence*, Black's Law Dictionary (11th ed. 2019). Thus, evidence of a parent's "just cause" is contradictory evidence that may rebut the *prima facie* evidence of abandonment. But rebutting *prima facie* evidence is not the same as establishing an affirmative defense. The law does not allow parents to legally abandon their children so long as "just cause" explains their failure to maintain normal parental relationships with their children. Rather, when more is presented beyond the *prima facie* evidence of abandonment—that is, a parent's failure to maintain a normal parental relationship for six months—that parent's "just cause" explaining their failure may rebut the *prima facie* showing, but it will not defeat a finding based on the additional affirmative evidence establishing abandonment.

**¶9**        Here, reasonable evidence supports terminating Father's parental rights on abandonment grounds. To find abandonment, courts must "consider whether a parent has (1) provided reasonable support to the children, (2) maintained regular contact with them, and (3) provided normal supervision." *Steven M. v. Dep't of Child Safety*, 254 Ariz. 426, 430, ¶ 12 (App. 2023). The Department's case manager testified that Father did not have regular contact with S.W. either before or since the Department became involved, nor had he given S.W. financial support, gifts, or letters. He further testified that when the Department took custody of S.W., she indicated she did not have contact with Father. Father failed to rebut this evidence.

**¶10**        In his appeal, Father claims that he had "just cause" for not maintaining his relationship with S.W. because he was incarcerated before S.W. entered the Department's custody. He also claims the Department did not notify him of the proceedings until he was served with the petition for termination in July 2023. He thus argues that because the Department should have been able to locate him, but did not, the Department failed to make reasonable efforts to find him. Father claims this failure deprived him of the opportunity to receive reunification services that would have nurtured and maintained the parent-child relationship between him and S.W.

**¶11**        The circumstances here do not provide "just cause" for Father's failure to maintain a relationship with S.W. Imprisonment is no defense to abandoning a child. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 250, ¶ 22 (2000). Incarcerated parents still "must act persistently to establish the [parent-child] relationship however possible and must vigorously assert [their] legal rights to the extent necessary." *Id.* The record here shows Father made no attempt to contact S.W., provide for her care in his absence, or even inquire about her during his incarceration. Also, the Department was not required to provide reunification efforts before terminating parental rights on abandonment grounds. *Bobby G. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 506, 510, ¶ 11 (App. 2008) ("[N]either § 8–533 nor federal law requires that a parent be provided reunification services before the court may terminate the parent's rights on the ground of abandonment."). Although incarcerated parents may have a right to reunification services, that arises when the Department seeks to terminate the parent-child relationship because of the length of the sentence; even then the parents must still request reunification services. *Steven M.*, 254 Ariz. at 430, ¶ 14 (citing *Jessie D. v. Dep't of Child Safety*, 251 Ariz. 574, 582, ¶ 21 (2021)). Here, the ground for termination was not length of sentence, and the Department was not obligated to provide reunification services.

The superior court did not abuse its discretion by finding Father had abandoned S.W.

## II.    The Superior Court Did Not Err in Finding That Terminating Father's Parental Rights Was in S.W.'s Best Interests.

**¶12**        Once the court finds termination of a parent's parental rights is supported by at least one statutory ground, it must then determine whether termination is in the child's best interests by a preponderance of the evidence. *Alma S.*, 245 Ariz. at 149, ¶ 8. For that, the court must look at whether the child would either benefit from the termination or suffer harm if termination is denied. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 16 (2016). The factors considered in determining a child's best interests include "whether[] (1) an adoptive placement is immediately available; (2) the existing placement is meeting the needs of the child; and (3) the children are adoptable." *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 379, ¶ 30 (App. 2010) (citations omitted).

**¶13**        Here, the record supports that termination of Father's parental rights is in S.W.'s best interests. S.W. is currently in the care of her grandmother, who is also a potential adoptive placement. S.W. has a close relationship with her grandmother along with her half-brother, cousin, and great-grandmother—all of whom also reside with her. The case manager also testified that denying termination would harm S.W. by prolonging her time with the Department and delaying the time when she could have a sense of permanency. There was no abuse of discretion in finding that terminating Father's rights was in S.W.'s best interests.

## CONCLUSION

**¶14**        For the reasons above, the superior court's dependency order is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:    AGFV